HARVEY M. RENSHAW ET AL. *v.* ARTHUR F. GRACE ET AL., COMMISSIONERS, ET AL.

HENRY O. MURPHY ET AL. *v.* ARTHUR F. GRACE ET AL., COMMISSIONERS, ET AL.

[Nos. 2, 3, April Term, 1928.]

*Decided May 2nd, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, DIGGES, and PARKE, JJ.

*Edward T. Miller,* with whom were *Henry Herbert Balch* and *Guion Miller* on the brief, for the appellants in No. 2.

*Edward T. Miller,* with whom was *John C. North* on the brief, for appellants in No. 3.

*T. Hughlett Henry, G. Elbert Marshall,* and *Charles J. Butler,* with whom was *Alfred L. Tharp* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

By chapter 227 of the Acts of 1927 the municipality of Easton was empowered to acquire additional equipment for fire protection and a municipal building for an engine house and public offices. The act conferred upon the mayor and council of Easton power "to purchase such additional fire equipment and appliances as they may deem necessary for the use of the said town, and to purchase land and erect thereon such building, or otherwise provide such land and building as in their judgment shall be suitable to house and take proper care of the property and equipment of the Easton fire department, and to supply the offices necessary for the use and needs of the town government and the several departments thereof"; and to issue the bonds of the municipality to the extent of $30,000, to pay therefor, with the usual provisions for the mayor and council of Easton to levy a tax to pay the interest and the principal of the bonds, for the mayor and council to keep a separate account of the proceeds of the tax to be levied to meet the town's obligation, and for the proceeds of the sale of the bonds by the mayor and council and of the tax to be used only for the purposes for which they were authorized. Sections 1, 2, 3. In brief, the statute gave full and complete power to the mayor and council of Easton, to begin, carry on, and complete everything in connection with the powers conferred. However, after bestowing this express and complete power, the statute in a subsequent section named five persons, who, together with the mayor of Easton, were "appointed a commission who shall have charge

of the purchase of such fire equipment as the mayor and council shall deem necessary, and also of the purchase of the land and of the erection of the building thereon, as is provided in section 2 hereof, and shall have power to advertise for bids for work, labor, and material, and make contracts therefor, or any part thereof; and to appoint such assistants as may be required, and to do all other acts and things which may be deemed necessary to be done to properly perform the duties for which said commission is appointed." Section 4. It is this section which gave rise to the pending controversy over the respective powers of the mayor and council and of the commission. In the resolution of this question it is the primary duty of the court to give effect to the intention as indicated by the language of the entire act, and, in the course of this construction, to reject none of the provisions which are susceptible of inclusion as a part of the whole legislative scheme.

In the delegation of power to the two bodies, there is a significant difference. The mayor and council is "authorized and empowered to purchase" (a) the fire equipment and appliances, as it may deem necessary; (b) and the land; and, if without a building, to erect a building thereon, according to its judgment of which choice will best subserve the municipal purpose. Section 1. The language used and the power conferred are, with respect to the mayor and council and the things which it is authorized to do, immediate, and therefore negative the notion that any principal actor is to intervene so as to reduce the mayor and council to a subordinate capacity or to deprive it of its power in the purchase of the authorized things. On the other hand, the commission "shall have charge of the purchase of such fire equipment as the mayor and council shall deem necessary, and also of the purchase of the land and of the erection of the building thereon, as is provided in section 2 hereof." Section 4. The reference to section 2 is a mistake, as it is only in section 1 that power is given for the purchase of the objects authorized. Section 2 is devoted exclusively to providing for the amount, form, issue, and sale of the bonds. Unless section 2 is read section

298

1, the reference in section 4 to section 2 is meaningless. It is therefore manifest that, while the delegation of power from the General Assembly to the mayor and council is direct and immediate, the delegation of power to the commission is mediate, and depends and is consequent upon the primary power of the mayor and council to purchase. In other words, the power of the commission is secondary and not to be used independently of the mayor and council. When the mayor and council determines upon a purchase of fire equipment and makes a single or alternate choice of land or land and building, it is then the office and the duty of the commission to take charge of the proposed purchase, and, in the capacity of agent for a principal, conduct the negotiations for the purchase and agree on the amount and terms, subject to the acceptance of the mayor and council. The change in the terms, whereby power is conferred with respect to the things to be purchased, is a clear indication that the Legislature had this object in view. If this were not true, the terms delegating power to the commission must be enlarged by interpretation to signify the same thing as those in which power was delegated to the mayor and council, and then, by an arbitrary process of construction, the explicit delegation of power to the mayor and council must be deleted from the statute or reduced to a meaningless formula, with the result that the natural and customary depositary of the power is stripped of authority in order to eliminate the irreconcilable conflict otherwise remaining. Such a tortuous construction will not prevail when all the provisions of the statute may be accorded their appropriate part in a sensible and harmonious operation of the whole body of the enactment. By committing to the management of the commission the negotiations and preliminary steps leading to the purchase to be made, the commission is given charge of what may reasonably be said to be in accordance with the expressed legislative intention and the ordinary meaning of the language employed. This conclusion is somewhat strengthened by the consideration that the only direct power conferred upon the commission is that, after the purchase has been made, the commission is empow-

ered specifically "to advertise for bids for work, labor, and material, and make contracts therefor or any part thereof; to appoint such assistants as may be required; and to do all other acts and things which may be deemed necessary to be done to properly perform the duties for which said commission was appointed." In none of these matters is there involved any conflict with the powers granted the mayor and council by the statute.

It is the preferable view to ascribe to the Legislature the design to have the party to be bound by the obligations conclude the contracts of purchase rather than a temporary commission created for a special purpose. A contrary holding would bind the municipality to a contract without the consent of its constituted officers, which the Legislature would probably have the power to authorize, but which is so improbable as to require such an intention to be expressed or necessarily inferred from the language used.

The proceeds of the bonds should be in the custody and under the control of the mayor and council of Easton. This follows from our construction of the act, and from the fact that the mayor and council make the sale of the bonds, receive the proceeds thereof, and are responsible for the application of the fund to the purpose prescribed by the enactment. Section 2.

The sufficiency of the bill of complaint may now be determined with these provisions of the act in mind. The proceedings were begun by three residents, taxpayers and voters in the town of Easton, and the five commissioners, and the mayor and council of Easton, and a certain A. Weinrott, were made the defendants. The bill of complaint alleges the status of the plaintiffs to be that of residents, taxpayers, and voters of Easton; the passage of the act and the acceptance of their appointment by the commissioners; the issue, sale, and receipt of the proceeds of the authorized bond issue, and that complainants are advised that those funds are held by the commission. The complainants further charge that they are advised that the commission has entered into an agreement with A. Weinrott, a defendant, to purchase from

him his property for office and fire department use for the sum of $18,000, and that the commission is about to pay over this purchase price out of the proceeds of the sale of the bonds. The direct averment is made that this purchase has never been authorized nor approved by the mayor and council of Easton. The bill also alleges that the mayor and council has duly instructed the commission what fire equipment and appliances it deems necessary for the use of the town, and that it has directed the commission to make the contract of purchase at a cost of $15,900. The other allegations are statements that the contemplated purchase and payment are illegal, and that the complainants are credibly informed that the mayor and council is opposed to the property selected and attempted to be purchased by the commission. The bill concludes with a prayer asking that the defendants be enjoined from paying or receiving any of the funds in the purchase or sale of the property "without the approval thereof by the mayor and council of Easton, evidenced by duly passed resolution of said body," and for general relief.

The first question arises on the demurrers to this bill of complaint by the commission and by A. Weinrott, the vendor. By the demurrers it is admitted that the commission has bought land and building of the defendant, A. Weinrott, and, in possession of the funds, intends to complete and close the transaction by paying the purchase price to the vendor, without first obtaining the official approval or sanction of the mayor and council, which is stated to disapprove of the premises bought on the ground of their unsuitableness. The contemplated action by the commission is wholly without authority and illegal. It is an attempt by them to make a purchase on their own initiative and without the participation, authorization, or approval of the mayor and council; and this unlawful purchase is to be accomplished through the control of funds improperly in the commission's custody. It is our opinion that this illegal purchase and diversion of funds should be enjoined as prayed; and that the complainants as taxpayers are in a position to institute the pending proceedings. *Stanley v. Baltimore,* 146 Md. 277, 303; *Balti-*

*more v. Gill,* 31 Md. 375; *Montgomery County v. Henderson,* 122 Md. 533, 537, 538; *Rushe v. Hyattsville,* 116 Md. 122, 125, 127.

Although the demurrer was interposed in the name of the commission, Charles W. Sigman, one of its members, had previously filed an answer admitting all the allegations of the bill of complaint, and stating that, at a meeting of the commission on August 12th, 1927, when it was decided by the commission to buy the premises involved in this controversy, his motion that no agreement be entered into for the purchase of the property until it had received the approval of the mayor and council failed for lack of a second.

And Harry M. Renshaw and three other members of the council, who were four-fifths of the councilmen, filed a petition to authorize them, in the name of the mayor and council of Easton, to intervene in the cause by having the town's position as a party changed from that of defendant, as made by the bill of complaint, to that of plaintiff, with the petitioners prosecuting the suit on behalf of the municipality. The ground of this application was the passage by the council of two resolutions on August 15th. The first resolution was adopted by the four votes of the petitioners, the fifth councilman not voting; and the second was passed by a unanimous vote. These resolutions, at the time of the filing of the petition, had not become effective because the mayor had failed to approve them, and the prescribed time had not elapsed for the council to call them up for passage over the objection of the mayor. The first resolution declared the council's disapproval of the contemplated purchase of the land and building, and the second instructed the attorney for the town to file an answer on its behalf admitting the allegations of the bill of complaint and consenting to the passage of a decree for the injunction as prayed. The plaintiffs assented to the granting of this petition.

The defendant and vendor filed separate motions that the answer of the commissioner, Sigman, and the petition of the four councilmen, be stricken from the files and records of the cause; and those motions were granted. The four coun-

cilmen entered an appeal from the action of the chancellor on their petition. Without deciding that the action of the court on either of these motions is appealable, and for the sole reason that this cause is to be remanded for further proceedings, these motions will be now considered in the order in which they have been mentioned.

The naming of individuals for the purpose of identifying or showing who composed the commission does not make these persons parties as individuals, but in their representative capacity and as together constituting the commission. The members of the commission are several, but the commission which they form is single, and therefore its pleadings must be single, and be the commission's act resulting from the official determination of its members in joint action at a formal meeting. If this were not true, there could be as many separate pleadings and defenses as its members could singly set up, to the great disorder and confusion of procedure. There could be no assurance on the pleadings of what was the actual position of the commission, speaking with such divers tongues; and issues would be multiplied, without any certainty as to which would be the pleading by which the commission was bound. It is a necessity of orderly procedure that pleadings be restricted to those of the commission; and the chancellor was, therefore, enforcing this rule when he granted the motion to strike from the record the answer filed by one of the commissioners.

Nor was there error in the refusal to transfer the municipality from its position as defendant to that of plaintiff, so as to afford four members of the council the desired opportunity to unite with the complainants in the relief sought. The mayor and council were already in court as defendants, and equity has power to mould its relief according to the exigencies of the circumstances, and its action is not limited, nor the town's rights impaired, by the latter's position as defendant. Even if it were possible, the facts do not demand such an extraordinary course as to place the conduct of the litigation involving the discharge of municipal duties in the hands of a self-appointed committee of the council, and

thereby deprive the town of the orderly and ordained conduct of its affairs by duly constituted authority.

For the reasons assigned in this opinion, there was no error from which the four councilmen could appeal, but there was error in sustaining the demurrer to the bill of complaint by the taxpayers, and therefore the orders striking out the answer of Charles W. Sigman, councilman, and the petition of Harvey M. Renshaw and three other councilmen will be affirmed, and the appeal in No. 2 dismissed; and the decree dismissing the bill of complaint of Henry O. Murphy and two other taxpayers will be reversed and cause remanded for further proceedings in conformity with this opinion.

> *Orders affirmed and appeal in No. 2 dismissed, and decree reversed in No. 3 and cause remanded. One-half the costs of this appeal to be paid by appellants in No. 2, and one-half by the appellees in No. 3.*