COHEN ET AL. *v.* BALTIMORE COUNTY

[No. 30, September Term, 1962.]

*Decided October 22, 1962.*

*Motion for rehearing filed November 21, 1962, denied December 12, 1962, and opinion modified.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Richard C. Murray,* with whom were *Smith & Harrison* on the brief, for appellants.

*Walter R. Haile, Assistant County Solicitor,* with whom was *Johnson Bowie, County Solicitor,* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

This is an action in equity to enforce the specific performance of an agreement to construct a road through the site of a shopping center. A decree (dismissing the bill) was entered in favor of the respondent, Baltimore County (County), and the complainants, Lee M. Cohen, *et al,* co-partners, trading as Court Plaza Realty Company (Court Plaza), have appealed. Court Plaza is the owner of a tract of commercially zoned property lying between and binding in part on Liberty Road and Church Lane in Baltimore County on which the shopping center is to be erected. On this appeal, the basic question is whether the agreement by the County to construct what is known as Hendon Road was executed with such formality as is required to bind the County.

The County admits that it negotiated with Court Plaza[1] to acquire a right of way for the construction by the County of a new road through the property mentioned and adjacent property. And, although it was denied in the answer, the chancellor found that as a result of the negotiations an oral agreement was made whereby Court Plaza would convey the required right of way to the County without compensation for such severance damages as would ensue as a result of the taking, and the County did not seriously challenge that an agreement had been made.

In furtherance of the agreement, the director of public works in October of 1958 proposed by way of a letter that the County would pave the road and construct curbs and gutters thereon at county expense if Court Plaza would accept the construction of the roadway as compensation for severance damages resulting from the taking. At the same time, the director advised the county executive in writing of the proposal and recom-

---

1. The record shows that the proposal made by the director of public works in October of 1958 to pave Hendon Road at county expense was addressed to Jacob L. Freedman, who apparently was the representative of the complainants or their predecessor in title, or both. And we assume that the prior negotiations and resulting oral agreement were between the same persons. But inasmuch as the bill alleges, and the answer admits, that it was the complainants who were the negotiating and contracting parties with whom the director was dealing, we shall herein refer to such complaining parties as "Court Plaza."

mended, since the estimated damages exceeded the cost of construction, that the County pay the cost thereof in lieu of damages. Approval of the proposal by the county executive was given by way of an endorsement to that effect on the inter-office communication from the director to the county executive. The County does not deny the authenticity of the correspondence between the director and county executive, but claims that the subsequently executed deed [2] conveying the right of way constitutes the final agreement between the parties.

Court Plaza accepted the officially approved proposal and, in reliance on the agreement, conveyed the right of way in fee, together with the slope easement areas, shown on the plat attached to and incorporated in the deed. After the deed had been executed in June of 1959, Court Plaza proceeded with the planning and preliminary development of the remainder of the tract as a shopping center and designed it as if the road were in existence. And, in applying for building permits, Court Plaza filed proposed subdivision plans showing the road.

In April of 1961, Court Plaza was advised by the bureau of public services that its preliminary plans for the shopping center had been processed and that the bureau had received certain comments from the office of planning and the bureau of engineering concerning the proposed development of the tract. The comments of the bureau of engineering with regard to highways mentions only three roads or streets. As to Church Lane, referred to as an "existing road which shall ultimately be improved," it was provided that the developer should be responsible for the cost of such improvements as are made. As to Hendon Road, described as "a major road in this area," it was provided that the work of improving it should "be accomplished by the County at County cost, in accordance with a previous agreement." The record shows that the proposed

---

2. The deed recites that it was executed in consideration of a nominal sum "and other good and valuable considerations, the receipt whereof is hereby acknowledged," but no specific reference was made therein to the prior negotiations, agreement and proposal. However, the County did therein further covenant that Court Plaza would not be subject to any special assessment by reason of the construction of the road.

road is to be used as a major collector road or street to provide for the movement of traffic throughout the area as well as other parts of the county and into Baltimore City. Lastly, it was noted that Liberty Road, which is a state road, was subject to State Roads Commission requirements.

Court Plaza was further advised that the attached printed form referred to as the public works agreement "to cover the financial responsibilities indicated by the above comments," should be properly executed and returned to the bureau for execution by the County. Court Plaza had made no application for assistance to improve any roads or streets within the development, and there is no mention, either in the comments or the public works agreement, of any "developer" roads or streets. There is, however, a standard provision in the works agreement requiring the developer to assume the full cost of "street paving, curbs and gutters" within the development and the "cost of one-half of a standard street section on all existing roads abutting the property."

In due course the County advertised for and received bids for the construction of Hendon Road. However, in August of 1961, the then county executive refused to allot county funds for the road and construction contracts have never been awarded.

The chancellor denied the relief sought (i) because he was of the opinion that the agreement was not executed with such formality as is required to bind the County; (ii) because the roads engineer had not approved the agreement pursuant to the requirements of Title 28, § 28-1 (11) of the County Code (1958); and (iii) because the agreement violated the statutory limitations stipulated in § 28-1 (13) concerning the assistance the County may give developers in the construction of private or internal roads within a development.

Neither of the statutory provisions, cited by the chancellor as additional reasons for denying the relief sought, were pleaded as a defense to specific performance and neither appears to have been an issue in the case. The County did not below, nor does it now on appeal, claim that it was beyond the power of the County to acquire real property needed for a public road. The only matters asserted in the lower court by way of de-

fense were to the effect that no one in authority had obligated the County to construct the road at county expense and that the deed was the final binding agreement between the parties, or, in the words expressed by counsel at the trial, the agreement had "merged" or had been "abolished" by the execution of the deed. The merger question, however, was not pressed below, was not decided by the chancellor, and is not raised on appeal. The only question therefore requiring more than cursory consideration is whether the agreement was executed with such formality as to bind the County. Court Plaza contends that it was and that the County should be required to specifically perform its agreement to construct Hendon Road. On the other hand, the County, claiming that Court Plaza did not prove an agreement that was clear, unambiguous and certain and one that was fair and mutual, contends that Court Plaza is not entitled to the relief sought.

We think the County should be required to specifically perform the agreement. We find nothing in the record to indicate any ambiguity or lack of clarity and certainty in the agreement between the parties, the terms of which, as set forth in the officially approved proposal, were accepted by the owners of the shopping center. And the same is true with respect to the conveyance by Court Plaza of the right of way to the County in furtherance of and in reliance on the final agreement. Nor do we find anything to indicate that the agreement was unfair or lacked mutuality: indeed the record discloses that Court Plaza had fully performed the agreement before it sought specific performance. As we read the record, the parties made a readily understandable agreement to the effect that Court Plaza would grant the County a right of way in fee for a public road through its property if the County in consideration of the grant would pave the right of way and construct curbs and gutters thereon. And in the deed, it was further covenanted that Court Plaza would not be subject to any special assessment by reason of the construction of the road.

So, as we see it, unless there are charter or statutory provisions to the contrary, the county executive not only had power to make the agreement in controversy, but authority to give it

legal effect by approving it in the form in which it had been prepared to evidence the intentions of the contracting parties.

While it was recently stated in *White v. County Comm'rs,* 227 Md. 573, 177 A. 2d 905 (1962), and in *Inter-City Co. v. Balto. County,* 218 Md. 80, 145 A. 2d 263 (1958), that it is generally recognized that nothing short of action by the board of county commissioners at a legal meeting can bind a county having a commission form of government, such is not the case in a chartered county such as Baltimore. For there, since the adoption of its Charter in 1956, executive power has been chiefly vested in one official designated as the county executive.

Art. IV, § 402(a) of the Charter provides that "[t]he county executive shall be the chief executive officer of the county and the official head of the county government." We further note that § 402(d) 12 provides that the county executive shall "sign on the county's behalf all deeds, contracts and other instruments which prior to the adoption of this Charter required the signature of the president or any member of the board of county commissioners, and to affix the county seal thereto." This provision does not, however, require the formal execution of a contract between the County and the other contracting party before the contract would be enforceable. As we recently had occasion to point out in *Hormes v. Baltimore County,* 225 Md. 371, 170 A. 2d 772 (1961), the provision describes a required "ministerial function," but does not authorize the making of the instruments mentioned therein.

Title 1, § 2-1(a) of the County Code provides that "[t]he county is authorized and empowered to acquire by purchase, gift, devise or condemnation any real or leasehold property for any public purpose." But there is no provision in the section as to how the power and authority thus conferred should be exercised. Nor is there any mandate, either in the code or Charter, requiring the execution of a formal contract for such acquisition. And as there is not, the general rule is that no particular mode or method of contracting is required to make a binding contract. In 63 C.J.S., *Municipal Corporations,* § 1007 a, it is said (at p. 589) "[i]f no formal mode of making a municipal contract is prescribed by charter, statute, or ordinance, then the contract may be made in the method common to all

corporations," and *Underwood v. Fairbanks, Morse & Co.,* 185 N. E. 118 (Ind. 1933), and *Peejay Corp. v. City of Newark,* 39 A. 2d 873 (N. J. Eq. 1944), are cited as authority for the statement. See also 10 *McQuillin on Municipal Corporations* (3d ed.), § 29.21.

Since the usual test of determining the validity of municipal action is reasonableness, the general rule is that when the mode of making a contract is not limited or prescribed by charter or statute, the adoption of a method to give effect to powers expressly granted is left to the discretion of the municipality, or, in this case, the county executive, who is the official head of the county government. *Whipps v. Town of Greybull,* 109 P. 2d 805 (Wyo. 1941). See also *Dillon on Municipal Corporations* (5th ed.), § 237.

The case of *Bd. of Co. Comm. v. MacPhail,* 214 Md. 192, 133 A. 2d 96 (1957), though not directly in point, is authority for the proposition that an informal agreement made by a county in the exercise of the discretion of its commissioners is binding on the county and is enforceable. In that case, where the equivalent of specific performance was granted of an agreement to grade and pave a public county road through the farm of the complainant, it was held, among other things, that the minutes of the board, evidencing that the county commissioners had assured the complainant (in consideration of his forbearance not to sue on a prior promise) that the work would be done, were enough to show that the agreement was sufficiently definite and certain to be mandatorily enforced.

We hold the chancellor should have decreed specific performance in the case at bar.

On the facts, we see no reason to consider the other grounds stated by the chancellor for denying specific performance. The road in question was a major county highway and not an internal road in the shopping center development, and the agreement of the County to construct the road did not require the approval of the roads engineer.

> *Decree reversed and case remanded for the entry of a decree granting specific performance; the appellee to pay the costs.*