## TUXEDO CHEVERLY VOLUNTEER FIRE COMPANY, INC. *v.* PRINCE GEORGE'S COUNTY, MARYLAND

[No. 894, September Term, 1977.]

*Decided May 11, 1978.*

The cause was argued before DAVIDSON, MOORE and MELVIN, JJ.

*Robert J. Booze,* with whom were *Jeffrey R. Schmieler* and *Margaret A. Beller* on the brief, for appellant.

*John R. Barr, Deputy County Attorney,* and *Dennis M. Gottesmann, Associate County Attorney,* with whom was *James C. Chapin, County Attorney for Prince George's County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this action for specific performance of an agreement between a volunteer fire company in Prince George's County, and the County, the chancellor denied the relief prayed on *ultra vires* grounds but ordered a rescission of the contract and the return of the parties to their respective positions prior to its execution. The court reasoned that the agreement was unenforceable because it involved "alienation" of the County's police power. We concur that the contract was not susceptible of specific performance but our finding is based upon appellee's alternative defense — pleaded, briefed and argued below but not ruled upon by the court — that the agreement was not approved by legislative act of the Council as required by the Charter of the County. Accordingly, we do not address the police power issue.

I

On November 22, 1974, appellant, Tuxedo Cheverly Volunteer Fire Company, entered into a written contract with appellee, Prince George's County, whereby the Company agreed to transfer all its real and personal property to the County in exchange for the County's promise to pay all encumbrances on the property and to provide the Company with increased professional manpower, pension and insurance

benefits for firefighters, a new ladder truck, and other equipment and services. The chief covenant relating to manpower required the County to provide:

> "Professional firefighters for the operation of the fire station to be known as Tuxedo-Cheverly Station; minimum staffing for each platoon needed for 24-hour coverage shall consist of no less than 4 men, one of whom shall be an officer and one of whom shall be a technician, for the period of one year which commences with the signing of this Agreement; no less than 6 men shall be provided by the County thereafter, one of whom shall be an officer, one of whom shall be a technician and one of whom shall be an Emergency Medical Technician for ambulance duty on each platoon needed for 24-hour coverage."

The equipment needs of the Company included a new ladder truck, a vehicle for transporting staff, firefighting gear, and "Page Boy" monitors. The County also agreed to make annual payments in the amount of $5,500 to the Company. This provision was contingent upon the appropriation of the necessary funds by the County Council and, in the event that such funds were not made available, the real and personal property of the Company were to be returned. The agreement was executed by the president of the Company and the then County Executive for Prince George's County, William W. Gullett.

In accordance with the contract, the Company's property was transferred to County ownership. The County complied with a number of its obligations, but the gravamen of appellant's complaint was that the County failed to provide the six professional firefighters, the new ladder truck, and increased insurance benefits. The Company filed a bill of complaint for specific performance in the Circuit Court for Prince George's County against Winfield M. Kelly, Jr., County Executive, Frank P. Briguglio, the late County Fire Chief, and the County. The demurrers of the County Executive and Fire Chief were sustained, and trial proceeded before Judge James F. Couch, Jr.

At the conclusion of the plaintiff's case, the County moved for a "directed verdict" (more properly, a motion to dismiss under Md. Rule 535), alleging three grounds: first, that the Company had failed to show any harm resulting from the County's refusal to provide increased manpower; second, that the contract was void since it had not been approved by the County Council, as was required under § 823 of the Charter for Prince George's County for any future appropriation of funds,[1] and third, that the contract was void by reason of alienating the police powers of the County. The chancellor denied the motion.

During the course of the defendant's case, the County called as a witness one Gloria A. Garner, the records manager in the Office of the Clerk to the Council of Prince George's County. She testified that the contract between the fire company and the County had never been approved by the County Council through resolution or bill, and that no minute item appeared in the Council records concerning the contract. This testimony was unrebutted by the Company. The chancellor took the case under advisement, and requested that the parties submit memoranda of law.

In its memorandum, the County reiterated the arguments made in its motion for "directed verdict" relating to absence of harm and alienation of police power; the County also argued that the contract was *ultra vires* and unenforceable under § 823 of the County Charter, because it required appropriations for a future fiscal year and legislative approval had not been obtained. Plaintiff submitted a reply memorandum in which it was contended with respect to the

---

1. Section 823 of the Charter for Prince George's County, entitled "Appropriation Control and Certification of Funds," provides, in pertinent part:

"Nothing in this Charter shall prevent the making of contracts providing for the payment of funds at a time beyond the fiscal year in which such contracts are made, provided the nature of such transactions reasonably requires the making of such contracts. *Any contract, lease, or other obligation requiring the payment of funds from the appropriations of a later fiscal year shall be made or approved by legislative act.*" (Emphasis added.)

The Charter, adopted on November 3, 1970, was amended in 1974 and in 1976. The quoted sentences, however, remain unaltered throughout.

latter question that the County had impliedly ratified the contract by accepting its benefits, and could not be permitted to avoid performance on the ground that the contract was *ultra vires* or illegal.

The court subsequently filed a written opinion, finding that the contract was void as an alienation of the police power of the County by virtue of "forc[ing] the Fire Chief to assign a specific number of firefighters to a particular station" and thereby "infring[ing] on his ability to maximize the use of a limited amount of manpower under his command." No disposition was made of the County's argument that the contract was void under § 823 of the Charter. A final decree was then issued denying specific performance and ordering "that the parties be returned to their respective positions prior to November 22, 1974."

## II

As a threshold proposition, we perceive no obstacle to our consideration of the invalidity of the contracting procedure in that the issue was not decided by the lower court. As has already been noted, the question was fully briefed below and was the subject of sworn testimony on behalf of the County, unrebutted by the fire company. The County, having prevailed below on the principle of alienation of police power, did not argue in its brief on appeal that the provisions of § 823 of the Charter had been violated. That contention was renewed, however, in the County's oral argument on appeal. We consider it properly before us.

Maryland Rule 1085 provides:

> "This Court will not *ordinarily* decide any point or question which does not plainly appear by the record to have been *tried and decided* by the lower court; but where a point or question of law was presented to the lower court and a decision of such point or question of law by this Court is necessary or desirable for the guidance of the lower court or to avoid the expense and delay of another appeal to this Court, such point or question of law may be decided

by this Court even though not decided by the lower court." (Emphasis added.)

The Rules Committee note to Rule 885, the corresponding rule for the Court of Appeals, and to which Rule 1085 is virtually identical, is indicative of an intent that appellate courts exercise a measure of discretion in considering issues tried but not decided below:

"It should be noted that Rule 885 is broader than the former rules in that in certain cases the Court of Appeals may decide a question presented to but not decided by the lower court. For instance, a case may present two separate legal questions both of which might be argued fully in the lower court. It might be that the lower court would decide one of the questions and then deem it unnecessary to decide the other. Under this Rule the Court of Appeals could decide both questions."

Such discretion may, in our view, very appropriately be exercised in a case involving the specific performance of a contract. There, the validity of the agreement is a condition precedent to the grant of such relief and, indeed, the Court of Appeals has indicated a disposition in such cases to consider matters bearing upon the validity *vel non* of the agreement, even if not specifically raised at the trial level. *Smith v. Biddle,* 188 Md. 315, 318, 52 A. 2d 473 (1947). In the case cited, an action for specific performance of a contract for the sale of realty where the court reversed a decree directing specific performance, the following statement appears in the opinion:

"Appellee seems to think that Rule 9 of this Court, relating to appeals generally, and Section 40 of Article 5, Code, 1939, bar the appellants from raising in this court matters not presented and argued before the chancellor, but we will pass the matter with the comment that *this court will always inquire into the question of whether a contract sought to be specifically enforced is in form that the law requires.*

Certainly our rule, and the provisions of the code cited, would not bar this court in an inquiry as to whether a contract for the sale of land was violative of the Statute of Frauds, or whether a third party had authority to sign a contract on behalf of the vendor; or whether the contract was so uncertain and duplicitous as to be unenforceable." (Emphasis added.) 188 Md. at 318, 52 A. 2d at 474.[2]

The above language is strikingly apposite to the instant case and the rule implied therein is applicable with *a fortiori* effect where, as here, the issue was an integral part of the proceedings below. *Compare Eastgate Associates v. Apper,* 276 Md. 698, 350 A. 2d 661 (1976); *Pride Mark Realty, Inc. v. Mullins,* 30 Md. App. 497, 510, 352 A. 2d 866, 873 (1976).

Unquestionably, the contract between the County and the fire company did call for expenditure of funds by the County in later fiscal years, and thus was subject to the provisions of § 823 of the Charter, previously quoted. This is exhibited most clearly by the provisions of the contract obligating the County to provide a minimum number of professional firefighters to the Company, and particularly for that number to be increased from four to six after a period of one year, and for the County to provide a new ladder truck and other equipment and insurance benefits to the Company. It is undisputed that the contract was never formally approved by legislative act of the Prince George's County Council.

Our review of the leading authorities in this State and elsewhere indicates that, as a general rule, such a contract is void. However, as appellant pointed out below, the County did receive the benefit of the contract, when title to the fire company's real and personal property was transferred to its name. Therefore, we shall consider the further question of whether the County is in the position of having ratified the contract by part performance and by accepting its benefits.

---

2. In Paape v. Grimes, 256 Md. 490, 495-96, 260 A. 2d 644, 647 (1970), the Court of Appeals overruled Smith v. Biddle, *supra,* and other cases, to the extent they indicated that a "rate of interest" must be expressed in a contract in order to make it specifically enforceable. This, of course, bears no relevance to the issue here presented.

## III

A leading Maryland case on the issue of whether the County's failure to follow the directives of its Charter renders the contract void is *Cohen v. Baltimore County,* 229 Md. 519, 185 A. 2d 185 (1962). *Cohen* was an action brought in equity to require specific performance of an agreement obligating the County to construct a road through the site of a shopping center, in exchange for a realty company's granting the County a right of way over the property. The right of way was indeed conveyed, but the county executive later refused to allot funds for building the road; the County then claimed that the agreement had not been executed with the requisite formalities to be binding upon it. The Court upheld the contract, finding no lack of clarity or unfairness, or other reason for not enforcing the County's obligation:

> "So, as we see it, *unless there are charter or statutory provisions to the contrary,* the county executive not only had power to make the agreement in controversy, but authority to give it legal effect by approving it in the form in which it had been prepared to evidence the intentions of the contracting parties." 229 Md. at 523-24, 185 A. 2d at 188. (Emphasis added.)

A different result obtained as to a related question in the earlier case of *Renshaw v. Grace,* 155 Md. 294, 142 A. 99 (1928), where a bill was brought to enjoin members of a commission named to purchase land and equipment for a municipal fire department from conveying the purchase price to the vendors without first receiving approval from the mayor and council of Easton. The court found that the actions of the commissioners were invalid, stating:

> "The contemplated action by the commission is wholly without authority and illegal. It is an attempt by them to make a purchase on their own initiative and without the participation, authorization, or approval of the mayor and council. . . ." 155 Md. at 300, 142 A. at 101.

These cases are consistent with the well-recognized general principle that a county or municipality can make a contract only in the manner prescribed by the legislature, and that if essential formalities are lacking, the contract is invalid and unenforceable. In 10 *McQuillin on Municipal Corporations* § 29.21 (3d ed. 1966), it is stated:

> "The mode of contracting, as prescribed by law, is the measure of the municipality's power to contract, and is exclusive. A specific designation of the manner in which contracts by municipal corporations shall be made operates as a limitation upon any general contractual power which is conferred.
>
> "Many courts are firm in holding that municipal officers not only derive their powers from the law, but that such powers must be exercised in strict accordance with the mode prescribed therein. The difference between contracts of a private person and those of an officer of a corporation is this: An individual has the right to make, alter, or ratify a contract at his own will with the consent of the other contracting party, or if he stands by and permits others to work for him, and accepts the work, the law implies a promise to pay its values; *whereas, an officer of a corporation has no power to make or alter a contract unless it be duly authorized, made or altered in the manner prescribed by the charter or statute from which the power is derived. Thus, for example, a charter provision that contracts are not binding unless made in writing by order of the council, signed by the mayor, and the draft thereof approved by the city attorney and council, is valid and mandatory.*" (Emphasis added.)

*McQuillin* further distinguishes between contracts which are illegal or irregularly executed, and those which are *ultra vires,* or outside the power of the municipal corporation to make. Where an "illegal" contract has been performed in good faith and benefits the public, recovery may generally be had in the event of breach. 10 *McQuillin on Municipal*

*Corporations, supra* § 29.10. The consequences for the injured party are more severe, however, where the contract is *ultra vires:*

> "If a contract is ultra vires it is *wholly void* and (a) no recovery can be had against the municipality thereon; (b) there can be no ratification, except by the legislature; (c) the municipality cannot be estopped to deny the validity of the contract; and (d) there can be no recovery on an implied contract, although it has been executed and the municipality has received the benefit of the contract." *Id.* (Emphasis added.)

It need scarcely be added that, being "wholly void," the contract may not be specifically enforced.

Pertinent to the question of whether the County's failure to secure the approval of the Council has the effect of precluding subsequent ratification is the following statement from 10 *McQuillin on Municipal Corporations, supra* § 29.104c:

> "[N]o ratification or estoppel can make lawful a municipal contract which is beyond the scope of the corporate powers, *or which is not executed in compliance with mandatory conditions prescribed in the charter or statutes,* or which is contrary to a declared policy adopted to protect the public. The notice imputed to all persons dealing with a municipal corporation of the limits of its powers, is in some cases advanced as the reason upon which these rules are based." (Emphasis added.) *See also Lipsitz v. Parr,* 164 Md. 222, 227-28, 164 A. 743, 745-46 (1933); *Gontrum v. Mayor of Baltimore,* 182 Md. 370, 35 A. 2d 128 (1943); 63 C.J.S. *Municipal Corporations* § 986.

It is apparent, therefore, that a contract which is *ultra vires* and void cannot be ratified by a municipal corporation; *accord, Packard v. Hayes,* 94 Md. 233, 252, 51 A. 32, 36 (1902); and that a contract executed in disregard of a mandatory charter

provision falls within this category. Ratification of a void contract may occur only if the authority empowered by charter or statute to make the contract subsequently performs the prescribed acts of authorization. *Hailey v. King County,* 149 P. 2d 823 (Wash. 1944).

A legislative constraint on the power to contract similar to the charter provision in the instant case was involved in *Town of Gila Bend v. Walled Lake Door Co.,* 490 P. 2d 551 (Ariz. 1971). There, a private corporation brought suit against the town and members of the town council, seeking damages for breach of an agreement to construct and install a water main, and seeking specific performance of the agreement. The town alleged, *inter alia,* that the contract was void under § 42-303, subsec. D of the Arizona Revised Statutes, which provided:

> "No expenditures shall be made for a purpose not included in such budget, and no expenditure shall be made, nor debt, obligation or liability incurred or created in any fiscal year in excess of the amount specified for each purpose in the budget for such fiscal year as finally adopted except when authorized under and pursuant to the provisions of § 42-308, whether or not the county, city or town has at any time received, or has on hand, funds or revenue in excess of those required to meet expenditures, debts, obligations, and liabilities incurred under such budget."

The court in *Gila Bend* found no violation of the statute since funds for the water line had been partially made available, for that specific purpose, even though future appropriations would also be required. It noted, however:

> "In a proper case, the principles of waiver and estoppel cannot be applied to circumvent stated legislative intent and policy, nor can a contract which violates A.R.S. § 42-303, subsec. D and is, therefore, void ab initio be ratified or approved *in any manner* by defendant or its officers or any other person so as to create an enforceable liability. *City of Phoenix v. Kidd,* 54 Ariz. 75, 92 P. 2d 513 (1939)." 490 P. 2d

at 558. *See also Layne v. City of Windsor,* 442 S.W.2d 497 (Mo. 1969).

## IV

It is our conclusion that the contract between the County and the fire company was void *ab initio,* and not subject to implied ratification. Judge Couch reached the same conclusion, though for a different reason, and went on to hold that the parties should "be returned to the status quo prior to their entering into the contract." We agree.

As stated in 10 *McQuillin on Municipal Corporations, supra* § 29.131:

"It is a well-settled general rule that where a municipality has received the benefits of a contract, equity will not cancel or set it aside without compelling the municipality to do equity by restoring the benefits received thereunder."

This principle was given effect in *J. A. & W. A. Hess, Inc. v. Hazle Township,* 363 A. 2d 844, 847 (Pa. Common. 1976), the court noting:

"[W]here the underlying contract is found to be invalid because it is ultra vires, improperly ratified by the municipal body, etc., *the courts will leave the parties in a status quo posture if at all possible,* and will not grant relief to a party which would have the effect of changing the pre-existing status quo. *Kreusler v. McKees Rocks School District,* 256 Pa. 281, 100 A. 821 (1917)." (Emphasis added.)

The restoration of the status quo, prior to November 22, 1974, will necessitate that the County return the real and personal property acquired from the fire company pursuant to the agreement. This is in accord with the general rule in this State relating to rescission of contracts in equity. *See Funger v. Mayor of Somerset,* 244 Md. 141, 223 A. 2d 168 (1966); *Lazorcak v. Feuerstein,* 273 Md. 69, 327 A. 2d 477 (1974).

*Order affirmed; appellant to pay the costs.*