520 A.2d 732

**LEAF CO.**

**v.**

**MONTGOMERY COUNTY, Maryland.**

**No. 471, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 5, 1987.

Floyd Willis, III (Willis & Savage and Stephen J. Savage, on the brief), Rockville, for appellant.

Alan M. Wright, Senior Asst. Co. Atty. (Paul A. McGuckian, Co. Atty., on the brief), Rockville, for appellee.

Argued before GILBERT, C.J., and KARWACKI and POLLITT, JJ.

POLLITT, Judge.

As regularly as the autumn season brings leaves, landowners are compelled to collect them. Where a sizeable amount of land is involved, the owner may need to enlist the services of others on a permanent basis. In this case, the land involved is Montgomery County, and the County enlisted the services of the aptly named Leaf Co. (Leafco).

At issue in this case is the legality of an oral contract with the County to extend a preexisting contract, where during the period of the contract the County amended its

Code to require all contracts to be in writing, but engaged in a course of conduct consisting of numerous oral modifications of the contract and continued to perform and receive the benefits of the contract after the oral extension. The County asserts that despite its conduct subsequent to the oral extension the contract is invalid and unenforceable, because it does not comply with legislatively mandated formalities and is therefore ultra vires. Leafco argues that the oral extension is governed by the law subsisting at the time and place of the making of the original contract, which allows oral contracts, or in the alternative, that the County, by reason of its conduct, is estopped from denying the existence of a binding contract. We conclude the County, in light of both its conduct and the reasonable and debatable belief originally held by both parties that the oral contract extension was valid, is estopped from denying the validity of the extension. We further conclude, however, that the finding below that Leafco's own conduct prevented the County from performing is not clearly erroneous, and that the trial judge did not err in denying Leafco damages.

Before reaching the merits of the case, we first address the County's motion to dismiss the appeal. Leafco failed to comply with Rule 1028 which required it to furnish parts of the transcript referred to in a record extract. Leafco pleads in its defense that its rule violation was the result of its counsel's limited practice and that the violation caused the County no harm. These contentions fail to address the problems raised by the rule violation.

Leafco's failure to include in a record extract portions of the trial transcript cited in the brief and relevant to the appeal impairs the ability of this Court to review the proceedings below. In *Spivey v. Harris*, 64 Md.App. 619, 623, 498 A.2d 281, 283 (1985), we noted:

> Compliance with the Rules not only will provide this Court with the information necessary for disposition of the issues, but also will provide as much as possible, a procedure for both parties to bring to the Court's attention the information which each party believes is required

for a fair review of the issues. Individual members of the bar have too frequently regarded these rules as optional and this Court has too frequently tolerated this attitude by overlooking the omissions and performing work which would have been done by counsel had counsel complied with the Rules.

Leafco's claim of ignorance of appellate practice does not excuse its failure to comply with the few basic rules governing appeals to this Court. As Chief Judge Hammond has noted, the litigant who sails the appellate seas without using the compass of the Rules does so at his peril. *Klopfer v. Werber*, 264 Md. 419, 286 A.2d 776 (1972).

■ Since the appellee has included the necessary portions of the record in the appendix to its brief, we are able to reach the merits of the case. In the exercise of our discretion, we will deny the motion to dismiss.

In September 1971, the County entered into a contract with Leafco (and the Maryland-National Capital Park and Planning Commission) which stated as its duration:

1. Term. This contract shall be for a period of eight (8) years with ten options for renewal of one year each; such renewal options shall be subject to renegotiation as to the terms of the contract between the Corporation and the County.

The contract required the County to deliver, and Leafco to take possession of, at least 50,000 cubic yards of unshredded leaves annually. The County agreed not to sell or give away unshredded leaves for commercial purposes to anyone except the County and M–NCPPC and not to sell or give shredded leaves to anyone. The then current County Code provision governing contracting was Montgomery County Code (1965, 1969 Supp.) § 84–11, which contained no requirement that County contracts be in writing. The contract was modified in numerous fashions on several occasions. All modifications were made orally. In 1977, the County amended the Code (Montgomery County Code (1972,

1977 Repl. Vol.) § 11 B–1(g)) to provide "All contracts shall be in writing."

In 1979, the original eight-year period expired, and Leafco and the County exercised the option to extend the contract "for the next year or until such time as a new contract is executed." Leafco reduced the agreement to writing in a letter, though this letter was never signed by the County. The County argues that because this letter was never signed, the contract was never extended. However, the County continued to dump leaves "with a vengeance" on Leafco property well into 1980, and the trial court (Mitchell, J.) determined that "the agreement was extended" by this letter. We will therefore treat the contract extension, as did Judge Mitchell, as based on the County's course of conduct and oral representations.

In the middle of 1980 the County stopped delivering to Leafco because of lack of dumping space, and began dumping its leaves on the land of one Bennoni Allnutt, a county farmer. At this point the County put the leaf dumping contract out for bids, and awarded the contract to a group including a former employee of Leafco. Leafco did not participate in the bidding process.

Leafco brought suit against the County in the Circuit Court for Montgomery County, arguing that the County breached the contract extension by dropping leaves on the Allnutt farm.[1] The trial court, in its memorandum, framed the question presented thus:

1. Did the communications between the parties of October 1979 or May 1980 constitute a valid contract?

Adopting 10 *McQuillin on Municipal Corporations* § 29.-21 (3d ed. 1966), which states flatly that "[A] charter provision that contracts are not binding unless made in writing ... is valid and mandatory," the trial judge then

---

**1.** Leafco also claims the County breached the agreement by ceasing to negotiate with Leafco and by advertising for bidders for the same service. We are unable to find any provision in the contract forbidding this.

ruled, "The County Code requires the contract to be in writing. The Court cannot find that the evidence shows that a written contract existed." The trial court's ruling apparently applies to both the October 1979 and May 1980 contracts.

The County, in support of the trial court's ruling, argues that the writing requirement is an essential prerequisite to the County's power to contract, and while the original contract need not be in writing, as it predates the legislative requirement, the oral renewal, agreed upon after the legislative amendment, is ultra vires. This argument could lead to harsh results. In this case, for example, it would void the renewal from the moment of inception, and release the County from any contractual liability despite any benefit the County accrued by disposing of fallen leaves, and despite any detriment incurred by Leafco in preparing land and equipment capable of absorbing and processing for resale as topsoil a year's supply of these leaves.

Leafco determined, as evidenced by the contract, that the County needed to provide it with a minimum of 50,000 pounds of unshredded leaves yearly in order for Leafco to make a profit. On the other hand, the renewal benefited the County from the start, because the County was immediately able to dispose of its leaves. The County also received further benefits from its prior oral modifications of the contract, which shifted from the County to Leafco the expense of purchasing necessary land and equipment. Leafco thus incurred substantial fixed costs that would only be offset by revenue earned from the resale of large quantities of leaves. As a result, a disavowal of the renewal in midyear by the County could enrich the County at Leafco's expense.[2]

---

**2.** The County claims that Leafco in fact incurred no expenses as a result of the renewal. The trial court made no ruling on this point. In view of our ultimate finding against Leafco, we do not address the issue of damages.

Despite the harsh potential of this argument, however, it is consistent with the general rule, as stated in 10 *McQuillin,. supra,* § 29.22.

> Statutes requiring municipal contracts to be in writing usually are construed to be mandatory, and a strict compliance therewith is required in order to bind a [county]. It has frequently been held that performance, or partial performance will not cure a failure to execute a written contract in accordance with a statutory mandate. [footnotes omitted]

The rationale for this rule lies in the public nature of the municipal corporation, which derives its powers from and represents the interests of all its constituents. Any harm resulting from an unauthorized use of this power thus flows to the public at large, and is of a potentially abusive nature, given the generally comprehensive power of any governmental unit. Ultra vires actions of a municipal corporation therefore, because they engender more concern than do ultra vires actions of a private corporation, are never susceptible of ratification.

The County cites, as support for this position, *Tuxedo Cheverly, Etc. v. Prince George's Cty.,* 39 Md.App. 322, 385 A.2d 819 (1978). In *Tuxedo,* this Court construed the validity of an agreement between Prince George's County and a volunteer fire company whereby the company agreed to transfer property to the County in exchange for the County's promise to pay encumbrances on the property and provide the fire company with manpower, benefits and equipment. In accordance with the agreement the fire company transferred its property to the County. When the County did not provide the fire company with all the benefits specified by the agreement, the fire company brought suit for specific performance. The trial court found that the County Council had never approved the contract, as the County Charter required.

This Court held that the contract was ultra vires, and therefore wholly void, citing 10 *McQuillin* § 29.21.

> Thus, for example, a charter provision that contracts are not binding unless made in writing by order of the council, signed by the mayor, and the draft thereof approved by the city attorney and council, is valid and mandatory.

39 Md.App. at 330, 385 A.2d at 824. We held that a contract which is ultra vires and void cannot be ratified by a municipal corporation, citing 10 *McQuillin* § 29.104c:

> The notice imputed to all persons dealing with a municipal corporation of the limits of its powers is in some cases advanced as the reason upon which these rules are based.

39 Md.App. at 331, 385 A.2d at 825. We also cited with approval *Town of Gila Bend v. Walled Lake Door Co.*, 107 Ariz. 545, 490 P.2d 551 (1971), which noted:

> In a proper case, the principles of waiver and estoppel cannot be applied to circumvent stated legislative intent and policy....

39 Md.App. at 332, 385 A.2d at 825.

The Court did not leave the fire company without relief, however. The Court rescinded the contract in equity, directing the County to return the property acquired from the fire company pursuant to the agreement, thereby restoring the parties to the status quo.

Application of the rule in *Tuxedo* was therefore justified because: 1) the law imputes notice to all parties of the limits of a municipality's powers, 2) the County cannot circumvent legislative intent and policy by entering into an ultra vires contract, and 3) the remedy of rescission was applicable. Other authorities would ameliorate the harsh consequences of the rule for equitable reasons.

> The view has been taken that if the benefits were furnished for, and enriched the corporation or county in respect of, a proper governmental purpose, although the contract under which they were furnished was ultra vires, the governmental body may be held liable for the reasonable value of such benefits. The view has also been expressed that the obligation to do justice rests upon all

persons, natural and artificial.... It has been said in this respect that the plea of ultra vires should not prevail where it would not advance justice but would, on the contrary, accomplish a legal wrong. [footnotes omitted] 56 Am.Jur.2d *Municipal Corporations* § 523. Some courts, therefore, have simply chosen not to apply the rule where to do so would perpetuate an injustice.

■ The renewal at issue here differs from the contract before the Court in *Tuxedo* in some important respects. It served to extend an original contract that the County had honored for eight years. At the time the original contract was formed, no writing requirement existed. The original contract had been consistently modified by oral agreement. These modifications, made at the County's request, were not ultra vires. It was not unreasonable to treat the renewal as simply another valid, oral modification.

Leafco was not on notice that the County was exceeding its powers (if the County in fact did exceed its powers). The law existing at the formation of the original contract could reasonably be interpreted to control all modifications and renewals. The renewal operated to extend a contract which was in keeping with the legislative intent extant at the time of its formation. Finally, the remedy of rescission is not available here, where Leafco provided the County with services, rather than money or property.

In *Permanent Fin. Corp. v. Montgomery County*, 308 Md. 239, 518 A.2d 123 (1986), the Court of Appeals held that Montgomery County was estopped from contending that a building's height violated the limitations of the County Code, despite a County Board of Appeals ruling that the building did violate the Code, where the builder had reasonably relied on the County's prior representation to the contrary. The Court found that the interpretation of the County Code provision at issue was "open to at least two reasonable and debatable interpretations." 308 Md. at 251, 518 A.2d at 129. In such a situation, where the County had in fact misrepresented the height limitations of its Code to a

building permit applicant, and the applicant had reasonably relied on this misrepresentation, "it would be inequitable to now permit the County" to enforce the correct height limitation.[3]

The present case is factually analogous. The application of the Code writing requirement to the renewal of the contract here is similarly "open to at least two reasonable and debatable interpretations." One such interpretation of the provision requires only new contracts to be in writing, and does not disturb the enforceability of contracts previously formed or renewals thereof. The appellate courts of this State have consistently repeated the general rule, stated in *Globe Slicing Machine Co. v. Murphy*, 161 Md. 667, 158 A. 26 (1932), that subsisting laws enter into and form part of the contract as if expressly referred to or incorporated in its terms, including those laws which affect the contract's validity, construction, discharge, and enforcement. *McQuillin* is equally emphatic on this point:

The validity of a municipal contract is to be determined by the laws in force at the time the agreement was made. The law as it exists when contracts are made, including the charter and statutes as they exist at the time contracts are executed, or bonds are issued, and the judicial interpretation of the law and construction then placed on such statutes by the highest court of a state, become a

---

**3.** In *Permanent*, the Court recognized that, "in practice," it had applied the doctrine of estoppel against municipal corporations "narrowly," citing *City of Hagerstown v. Long Meadow*, 264 Md. 481, 287 A.2d 242 (1972); *Kent County v. Abel*, 246 Md. 395, 228 A.2d 247 (1967); *Berwyn Heights v. Rogers*, 228 Md. 271, 179 A.2d 712 (1962); and *Lipsitz v. Parr*, 164 Md. 222, 164 A. 743 (1933). The Court, however, seized upon language in *City of Hagerstown v. Long Meadow*, 264 Md. at 493, 287 A.2d at 248, which acknowledges the potential application of the doctrine.

This rule, when applicable, must be bottomed on the need for the interpretation or clarification of an ambiguous statute or ordinance. . . .

308 Md. at 251, 518 A.2d at 129. Both *Long Meadow* and *Permanent* construed the municipality's issuance of building permits in violation of applicable law.

part of such contracts, and they cannot be impaired by subsequent legislation or judicial decisions to the contrary. "The obligation of a contract is measured by the standard of the laws in force at the time it was entered into, and its performance is to be regulated by the terms and rules which they prescribe."

10 *McQuillin* § 29.118.

The County argues that this interpretation could only save a contract formed prior to the Code requirement. It is not unreasonable to assume, however, that the renewal is simply a modification of the contract, or rather an exercise of an option provided in the original contract, and thus part of the original rather than a completely separate and distinct new contract. This is the interpretation espoused by the County in 1979–80, when it continued to dump leaves on Leafco property. Whether this interpretation of the writing requirement is in fact correct is not the issue. The issue is solely one of reasonableness.

■ As stated above, we believe this case is more closely akin to *Permanent* than to *Tuxedo*. In *Tuxedo*, both the charter provision and its application were unambiguous. While the Code provision at issue here is clear, the same cannot be said of its application to existing contracts and renewals thereof. The County, by its actions, represented that the requirement was not applicable to the renewal. It was not unreasonable for Leafco to rely on the County's interpretation. The County benefited from the contract. Leafco incurred expense in honoring the renewal. The County was not circumventing any legislative intent, as the original contract formed in 1971 was entirely valid. The contract is one for services already performed, which is not susceptible of rescission. It would be inequitable now to permit the County to deny the existence of a contract. *See also Konig v. M. & C.C. of Balt.*, 128 Md. 465, 97 A. 837 (1916), where a contract for furnishing equipment for a city

filtration plant was attacked as invalid because the bidding was not in accordance with applicable provisions of the municipal charter. The Court held the City of Baltimore obligated to pay the contractor as agreed because the City, its legal advisors, and the contractor all believed the contract to be valid.

■ This finding does not save Leafco, however, because Judge Mitchell made a factual determination that Leafco's own conduct caused the County's failure to perform. We do not find this ruling to be clearly erroneous, as ample testimony below established the fact that Leafco's Gun Powder Road site and subsequent sites became overrun with leaves and mud, making ingress and egress to the sites by truck impossible. Therefore, Leafco cannot now assert breach by the County. *Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 248 Md. 267, 235 A.2d 735 (1967).

■ Leafco also asserts that an entirely new contract, with substantially different terms, was formed by communication between the parties in May 1980. This assertion must fail for two reasons, both of them significant. The negotiations centered on a fee that Leafco would charge the County, yet the amount of this fee was never established. Where such a material term is omitted, courts cannot enforce a contract. *First Nat'l Bk. v. Burton, Parsons & Co.*, 57 Md.App. 437, 470 A.2d 822 (1984). There was therefore no contract, oral or otherwise. Further, under the applicable provision of the County Code in 1980, an oral contract would be clearly ultra vires, and Leafco could not reasonably interpret the negotiations as forming a valid new contract. In such a situation, the County cannot ratify an ultra vires contract, nor can it be estopped from denying the contract's existence.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.