Itzhak ALGAVE, et al.

v.

MAYOR AND CITY COUNCIL OF OCEAN CITY.

No. Civ. L–97–706.

United States District Court,
D. Maryland.

May 21, 1998.

Harry M. Walsh, Easton, MD, for Plaintiffs.

Guy R. Ayres III, Ocean City, MD, for Defendant.

*MEMORANDUM*

LEGG, District Judge.

This is a suit by Itzhak Algave ("Algave") and his wife, Goldy Perez ("Perez"), for injuries sustained by Algave while playing soccer at the Northside Park Gymnasium ("Northside Park" or the "Gymnasium"), a facility operated by the Recreation and Parks Division of Ocean City, Maryland. The plaintiffs' Second Amended Complaint, filed on December 19, 1997, alleges causes of action sounding in tort, breach of contract and loss of consortium. The defendant has filed a motion for summary judgment.[1] For the reasons stated below, the Court finds that (1) the defendant is immune from suit with respect to the tort claims; and (2) the plaintiffs have failed to establish the existence of a valid contract. Accordingly, by separate Order the Court shall grant summary judgment to the defendant.

**Background**

On March 27, 1996, Algave entered Northside Park in order to play soccer. Apparently, a leak in the roof had caused a puddle of water to form on the Gymnasium's floor. Algave slipped on the puddle and sustained injuries to his right knee and back. Immediately after the accident, Perez drove Algave to the Atlantic General Hospital, where Algave was given a pain injection and ice-packs, and an x-ray on his right knee was taken. Pain medication, crutches and a knee brace were prescribed.

Over the next few months, Algave required increasing medical attention, including surgery. Algave and Perez, through counsel Terri L. Taylor, Esq., submitted all medical bills and related expenses to the Town of Ocean City (the "Town"). F. Ralph Stitt ("Stitt"), Risk Manager for the Town, arranged for the payment of such bills and expenses by the Town. As of January 31, 1997, the amount of Algave's medical bills and related expenses covered by the Town totaled $22,897.00.

On January 31, 1997, Stitt wrote Taylor to confirm that the Town had made an "offer of settlement" in the amount of $10,000, and that the plaintiffs had rejected that offer. Plaintiffs' Exh. 3. Stitt advised Taylor that the Town was withdrawing the offer and discontinuing any further payments to the plaintiffs. In addition, Stitt advised that the Town had "agreed to reimburse [Algave] his lost wages through December 31, 1996," and that a check was being processed to comply with that agreement.

The plaintiffs commenced this action on March 10, 1997.

**Discussion**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[2]

---

1. Pursuant to the Court's Order dated December 15, 1997, the defendant's motion is styled "Second Amended Motion for Summary Judgment." The plaintiffs responded to the motion on February 17, 1998, and the defendant filed a Reply on March 2, 1998. Having reviewed the parties' submissions, the Court finds that a hearing is not necessary. Local Rule 105.6.

2. In determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987). Material factual disputes are "genuine" only if a reasonable jury could return a verdict for the non-moving party based upon the record as a whole. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find

### a. Tort Claims

Municipalities are immune from tort liability for actions that are governmental rather than proprietary in nature. *Austin v. City of Baltimore*, 286 Md. 51, 53, 405 A.2d 255 (1979); *Higgins v. City of Rockville*, 86 Md.App. 670, 676, 587 A.2d 1168 (1991). A municipal act is governmental in nature when it "is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest ..." *Mayor and City Council of Baltimore v. State, ex rel. Blueford*, 173 Md. 267, 276, 195 A. 571 (1937). Traditionally, the operation of recreational facilities by municipalities has been considered governmental in nature. *See Austin* and *Higgins, supra.*

In Maryland, municipalities have express legislative authority to "provide, maintain, and operate such community and social services for the preservation and promotion of the health, recreation, welfare and enlightenment of the inhabitants of the municipality as the legislative body may determine." Md. Code Ann. art. 23A, § 2(b)(7). The Ocean City Charter incorporates such grant of authority "[t]o establish and maintain public parks, gardens, playgrounds and other recreational facilities ..." Ocean City Code, § C–414(46).

Northside Park is a public access recreational facility. The construction of Northside Park was financed through the issuance of Ocean City municipal bonds (Defendant's Exh. 2, Ordinance No.1982–42, at 8). The daily operations of Northside Park are financed as part of the annual operating budget of the Recreation and Parks Division of Ocean City. That Division's budget is passed by ordinance of the Mayor and City Council as part of Ocean City's annual budget. Defendant's Exh. 3, Affidavit of Martha Bennet, Finance Administrator of the Town of Ocean City ("Bennet Aff."), at ¶¶ 5–6.

The Recreation and Parks Division of Ocean City operates at annual losses of over $1 million. To cover such losses, the Division receives some support from the State of Maryland and, occasionally, the Worcester County government. Bennet Aff., attachments. Although Northside Park charges nominal fees for the use of certain facilities, and derives some additional revenues from the public in the form of direct donations and the like (Plaintiff's Exh. 2), Northside Park's annual losses exceed $800,000. Defendant's Exh. 4, Affidavit of Tom Perlozzo, Director of the Recreation and Parks Division of Ocean City, at ¶ 4.

Under such circumstances, no reasonable jury could find that Ocean City's operation of Northside Park is anything other than governmental in nature. Accordingly, Ocean City is immune from tort liability in this action and the Court shall grant the defendant summary judgment on the plaintiffs' tort claims.

### b. Contract Claims

The plaintiffs contend that Ocean City expressly agreed to cover all costs associated with Algave's injuries. Taylor and Stitt's correspondence indicates that Ocean City paid Algave's substantial medical bills and related expenses between late March, 1996 and the end of January, 1997. None of the letters expresses, however, Ocean City's intention to bind itself to making similar payments in the future. The record contains no further documents or testimony to indicate such an intention on the part of Ocean City at any time. In short, the plaintiffs offer no evidence that Ocean City entered into an agreement as alleged, whether oral or written.[3]

Nevertheless, the plaintiffs contend that Ocean City's payment of Algave's expenses until January, 1997, created an obligation for the City to continue such payments in the future. The plaintiffs offer no evidence, however, that such payments were made in exchange for consideration. In addition, a

---

for the [non-moving party]." *Id.* 477 U.S. at 252, 106 S.Ct. 2505.

**3.** To the contrary, the record shows that the plaintiffs rejected Ocean City's offer of $10,000 in settlement of this dispute. Plaintiff's Exh. 3, Letter of F. Ralph Stitt, dated January 31, 1997.

contract as alleged by the plaintiffs would contravene the statute of frauds and the provisions of Maryland law concerning the circumstances under which municipal corporations may bind themselves in contract.

Maryland's statute of frauds reads, in pertinent part:

> "Unless a contract ..., or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party, an action may not be brought:
>
> ...
>
> (3) On any agreement that is not to be performed within 1 year from the making of the agreement."

Md.Code Ann., Cts. & Jud.Proc. § 5–901.

The obligation to cover Algave's expenses might clearly extend for more than a year. Consequently, the contract as envisioned by the plaintiffs would have had to be in writing in order to satisfy the statute of frauds.

In addition, the Ocean City Charter provides that "[a]ll purchases and contracts for the town government shall be made by the City Manager." Ocean City Charter, § C–721. "[A] county or municipality can make a contract only in the manner prescribed by the legislature ... if essential formalities are lacking, the contract is invalid and unenforceable." *Tuxedo Cheverly Volunteer Fire Co., Inc. v. Prince George's County*, 39 Md.App. 322, 330,.385 A.2d 819 (1978). The plaintiffs have failed to show that the Ocean City Manager was in any way involved in the formation of the alleged contract.

For the reasons stated, no reasonable jury could conclude on this record that the plaintiffs had a valid contract with the defendant concerning the payment of Algave's medical bills and related expenses. Accordingly, the Court shall grant the defendant summary judgment on the plaintiffs' contract claims.

**Conclusion**

For the reasons stated, the Court by separate Order shall grant summary judgment to the defendant.