68 N.J. Super. 197 (1961)
172 A.2d 40
MIDTOWN PROPERTIES, INC., A CORPORATION, PLAINTIFF,
v.
TOWNSHIP OF MADISON, NEW JERSEY, A MUNICIPAL CORPORATION, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 2, 1961.
*201 Messrs. Heller and Laiks (Mr. Murray A. Laiks, appearing) attorneys for plaintiff.
Mr. Harold G. Smith, attorney for defendant, Township of Madison.
Mr. John J. Salvest, attorney for defendant, Madison Township Planning Board.
HALPERN, J.S.C. (orally delivered).
These proceedings present two motions for determination.
The plaintiff, Midtown Properties, Inc., seeks, by way of motion, to specifically enforce a consent judgment entered by this court on September 9, 1959; and the defendants seek, by way of motion, to vacate and set aside this judgment.
The matter comes on for hearing based upon the pleadings, the affidavits, briefs and oral argument; all of which have been considered by the court. Because of the public importance of the matter, I deem it advisable to enter my decision today, orally and in open court, so that any aggrieved party will be able to expeditiously pursue any available remedy.
To better understand the problem it is necessary to briefly set forth the facts which are not seriously in dispute  giving all favorable inferences to the party against whom relief is sought. In other words, I am adopting the same approach I would use if the motions were for summary judgment.
Plaintiff owns about 1,475 acres of land in the defendant township, having a perimeter of about 19 1/2 miles.
*202 The township, on August 9, 1954, pursuant to N.J.S.A. 40:55-1.1 et seq., had adopted a Master Plan for the planned development of the lands within its borders which totaled about 40.2 square miles. In accordance with the power given to it under the enabling statutes, the township's ordinance provided for a planning board, with power to consider and make recommendations to the governing body in connection with proposed subdivisions. This planning board is known in the law as a "Weak Board."
Plaintiff applied to the Planning Board for subdivision of its entire tract, and on September 29, 1955 the Planning Board recommended favorable action thereon to the Township Committee. The Committee approved the application on the same day upon plaintiff's compliance with certain conditions pertaining to sewage, roads and in addition that plaintiff furnish land and certain school facilities. The original approval encompassed about 5,800 lots, each lot having an area consistent with the ordinance requirements of a minimum of 65 feet by 100 feet.
On July 23, 1956, the township amended its ordinance increasing its lot sizes for most of the area in which plaintiff's lands were located to a minimum frontage of 75 feet and a minimum lot area of 9,000 square feet.
On April 17, 1957, plaintiff applied to the Planning Board for final approval of 129 lots. The application failed to meet the condition concerning the furnishing of school facilities and the sewage requirements and the Board took no action thereon.
On May 15, 1957 plaintiff again submitted its application for final approval of 129 lots (presumably the same ones) on lots 65 feet by 100 feet in area.
On May 20, 1957, by amendment to its zoning ordinance, the township further increased the lot sizes for the area in which plaintiff's lands were located to a minimum width of 100 feet and a minimum area of 10,000 square feet.
On June 19, 1957 the Planning Board denied final approval for the 129 lots.
*203 The plaintiff did not appeal from the Planning Board's decision to the Township Committee, nor did it seek relief from the courts until November 27, 1957, when it started suit to compel defendants to give final approval for the 129 lots in question, and for other relief.
No formal application was ever made by the plaintiffs for final approval of the remainder of the tract.
The law suit remained dormant after defendants filed their answers. It was never pretried. Evidently the parties negotiated with reference to the proposed development.
On July 27, 1959, almost two years after the suit was started, and almost four years after tentative approval had been obtained, the plaintiff and the defendants purported to enter into a written contract which set forth the terms under which plaintiff could proceed with the development. This agreement, which will be discussed shortly, became the basis on which the trial judge entered a consent judgment. The trial judge took no testimony, nor does it appear that he even knew what the parties had agreed upon. In reliance upon this contract and judgment the plaintiff spent approximately $200,000, mostly in engineering fees, to redesign its layout of lots, sewers, streets, play areas, fire houses, police stations, schools, business and shopping areas, etc.
In February 1961 plaintiff filed its plats and other documents with the Planning Board for final approval, but on March 5, 1961 the Board refused to grant final approval because it contended the consent judgment of September 9, 1959 was illegal and void. Plaintiff appealed the Board's action to the Township Committee. On March 25, 1961 the Committee affirmed the action of the Board for the same reasons given by the Board.
These motions followed.
At the outset I should dispose of the original tentative approval of September 29, 1955, its effectiveness as of this date, and the plaintiff's original suit to compel defendants to grant final approval for the 129 lots.
*204 Under N.J.S.A. 40:55-1.1 et seq., the tentative approval granted protected the plaintiff from any changes by the defendants in the "general terms and conditions" upon which the tentative approval was granted for a period of three years, which expired on September 29, 1958. This period could not be extended by the defendants; and since plaintiff never applied to the Planning Board for final approval except for the 129 lots during this three-year period, its right to obtain final approval for the remaining lots in the tract lapsed. Hilton Acres v. Klein, 64 N.J. Super. 281 (App. Div. 1960), certif. granted 34 N.J. 329 (1961).
Without considering or deciding whether the Planning Board was correct in refusing final approval for the 129 lots, it is sufficient to say that plaintiff is not entitled to any relief with respect thereto because it failed to exhaust its administrative remedy by appealing to the Township Committee as provided for in N.J.S.A. 40:55-1.19. In addition plaintiff did not institute its suit within the time required under R.R. 4:88-15.
Plaintiff contends, however, that even though it never made formal application for temporary or final approval of the redesigned subdivision until February 1961, the consent judgment entered in the cause on September 9, 1959 created a vested legal right entitling it to proceed with the project in accordance with the terms of that judgment.
It therefore becomes necessary to consider the contract of July 27, 1959, which became the consent judgment of September 9, 1959, in order to determine what rights stemmed therefrom.
It is quite obvious that the parties approached the problem they were confronted with as ordinary individuals might do under like circumstances and in complete disregard of the applicable statutory directives. The plaintiff wanted to develop its land, and the signatories to the contract were laying down the conditions under which it could do so. No formal resolution of the Planning Board was adopted nor were public hearings held in accordance with the statutes. *205 No proof has been offered as to whether the other signatories to the contract had previously adopted resolutions pertaining to this contract.
A mere reading of the contract will disclose the illegality of what the parties proposed to do. The plaintiff, among other things, agreed to pay certain moneys or erect a certain number of schoolrooms for the Board of Education; it agreed not to erect more than 1,350 homes in any one year; to donate to the township two locations, of two acres each, for the erection of fire houses, police stations and first aid squads.
The defendants agreed among other things to the following:
(a) The contract was to be the approved subdivision  and that the township would adopt, in the future, the necessary ordinances to implement and conform to the contract, and legalize the authorized uses.
(b) The contract required the township to designate certain areas of plaintiff's tract as residential with plots of 75 feet by 100 feet; certain areas for garden apartments; light and heavy industry; commercial uses, etc.
(c) The procedure for obtaining final approval was set forth in the contract  and that plaintiff was only required to comply with the existing township ordinances and regulations of the Planning Board  all in complete disregard of the statutory procedure and its own ordinances and regulations.
(d) Not to pass any regulations or ordinances which would in any wise change the terms of the contract.
(e) Not to change any building code requirements, and to the extent that the contract changed any of the township's building code requirements this contract would govern.
(f) To the extent that the contract was in conflict with any statute, rule, ordinance or regulation, the contract was to govern.
(g) For a period of seven years to be bound by the contract  and would not amend or change any of its ordinances or regulations.
*206 (h) The contract to take the place of the statutory tentative approval.
It is this contract, as incorporated in the consent judgment, upon which the plaintiff relies for its claim for permission to proceed with its development.
This contract, on its face, is illegal and void. It is an attempt to do by contract what can only be done by following statutory procedure. The zoning power delegated by the Legislature to the township officials was prostituted for the special benefit of the plaintiff. Certainly, if the contract is illegal and void, having it incorporated in a consent judgment will not breathe legal life into it. Edelstein v. Asbury Park, 51 N.J. Super. 368 (App. Div. 1958); 38 Am. Jur. sec. 727, p. 429 (1941).
The viciousness of this contract may be briefly summarized thusly:
(a) The township having adopted a master plan it could only be amended or changed in accordance with law and not by a contract which destroys such master plan and results in haphazard or piecemeal zoning.
(b) The defendants surrendered their inherent power, right, and duty, to keep their zoning and planning ordinances mutable by making necessary amendments or changes for the benefit of the public.
(c) The defendants cast aside all statutory and ordinance requirements which are applicable to all persons to make a special deal with plaintiff.
(d) The parties attempted to create special zoning benefits for plaintiff contrary to law and the public good.
(e) The contract recited that the defendants had passed appropriate resolutions authorizing the making of the contract when in fact the Planning Board, at least, knew that no such resolution had been adopted.
The defendants seek to vacate the judgment under R.R. 4:62-2. This rule permits a court to relieve a party from a judgment if the judgment is void or for "any other reason justifying relief from the operation of the judgment * * *."
*207 If the rule is not sufficient to vest authority in the court to grant relief, our decided cases have long established the philosophy that a court will set aside a void judgment at any time unless some equitable principle calls for some contrary action. Gloucester City Trust Co. v. Goodfellow, 121 N.J.L. 546 (E. & A. 1939).
The mere fact that the contract took the changed form of a consent judgment does not make it good. Edelstein v. Asbury Park, supra.
Having decided that I have the power to set aside and vacate a void judgment, I will turn to an analysis of fundamental zoning and municipal law as it affects the contract in question.
The power to zone is an exercise of police power which the State has granted to all municipalities. This power must be exercised in a reasonable manner and not arbitrarily, discriminatorily or capriciously; and it must be exercised so as to secure the public health, safety, morals and welfare of the public.
A municipality in exercising the power delegated to it must act within such delegated power and cannot go beyond it. Where the statute sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure. Grogan v. DeSapio, 11 N.J. 308 (1953); Giannone v. Carlin, 20 N.J. 511 (1955).
The contract in question is an attempt to subdivide plaintiff's property, to rezone it and to bargain away defendants' delegated legislative function contrary to law. Magnolia Development Co. v. Coles, 10 N.J. 223 (1952); V.F. Zahodiakin, etc. v. Zoning Bd. of Adj. of Summit, 8 N.J. 386 (1952); 62 C.J.S. Municipal Corporations § 139, p. 281 (1949).
The contract in question attempted to give plaintiff special benefits and privileges, which is condemned by law, is ultra vires, void and contrary to our public policy. Houston *208 Petroleum Co. v. Automotive Products Credit Ass'n., 9 N.J. 122 (1952).
If this contract and consent judgment were to be held valid this court would be putting its stamp of approval upon what is obviously an unauthorized and illegal exercise of defendant's zoning power. We would be permitting special rules to be established for plaintiff as against all other developers. We would be allowing these parties to circumvent our state laws and the township's own ordinances and regulations by not having to apply for tentative approval; giving of statutory notice to interested persons; holding of public hearings; filing of preliminary and final sketches; making of uniform regulations; by-passing the Planning Board's hearings and recommendations; and destroying the township's overall or master plan for the development of the township.
It is too well established to cite authority for the proposition that while a public body may make contracts as an individual, it can only do so within its express or implied powers; and that those who deal with a municipality are charged with notice of the limitations imposed by law upon the exercise of that power. A public body may only act by resolution or ordinance; it contracts on behalf of the public and even its representatives have no power to bind it to an illegal and void contract.
Plaintiff contends that it spent about $200,000 in reliance on the contract and judgment in issue and, therefore, the defendants are estopped from raising the issue of illegality. It is true that an estoppel may be urged against a public body where the public body has the authority to make the contract, but because of some technicality has not properly exercised its power  such does not apply to contracts which are ultra vires and void ab initio. Johnson v. Hospital Service Plan of N.J., 25 N.J. 134 (1957); Samuel v. Wildwood, 47 N.J. Super. 162 (Ch. Div. 1957); Home Owners v. Glen Rock, 34 N.J. 305 (1961); Zahodiakin, supra; Thornton v. Village of Ridgewood, 17 N.J. 499 *209 (1955); Adler v. Dept. of Parks, Irvington, 20 N.J. Super. 240 (App. Div. 1952); Pressey v. Hillsborough Township, 37 N.J. Super. 486 (App. Div. 1955), certif. denied 20 N.J. 303 (1956); Beirn v. Morris, 14 N.J. 529 (1954). While the cases cited deal with the ordinary contract situations the same principle has been applied in zoning cases. Jantausch v. Borough of Verona, 41 N.J. Super. 89, 94 (Law Div. 1956), affirmed 24 N.J. 326 (1957).
I, therefore, conclude that the contract of July 27, 1959 was illegal and void; and that plaintiff obtained no rights thereunder. Since the contract is the basis for the consent judgment of September 9, 1959, the judgment will be set aside and vacated.
There is one feature of the case which I have left to the end but which I will discuss because of its public importance even though not raised or argued by the parties.
The original tentative approval as well as the contract of July 27, 1959, among other things, required the plaintiff to pay money to the township, or the Board of Education, for the construction of schools, based upon a formula of the number of houses built. I am of the opinion that a municipality has no legal right to impose such a condition upon a developer in granting him temporary or final approval of a proposed subdivision.
The power given to a municipality to impose conditions upon a developer stems from N.J.S.A. 40:55-1.20, 40:55-1.21 and 40:55-1.22. There is nothing in these statutes which would authorize or justify the imposition of such a condition.
It is the duty of the municipality to educate our citizenry; to build schools, and equip and maintain them for such purposes. The cost for public education, in a democratic society, must be borne by the public and the funds to be used for such purpose must be raised by public taxation.
Our courts have held that a municipality has no right to refuse to grant approval for a building project merely because its school system would be unable to absorb *210 the increase of students; or that it would increase taxes. See Township of Springfield v. Bensley, 19 N.J. Super. 147, 158 (Ch. Div. 1952).
It is my opinion that any attempt to compel a developer to pay for building a school, or to donate land for a school, as a condition precedent to giving temporary or final approval to a subdivision is violative of his constitutional rights in that it is a taking of his property without due process of law and deprives him of equal protection of the law, and therefore is illegal and void. Rosen v. Village of Downer's Grove, 19 Ill.2d 448, 167 N.E.2d 230 (Sup. Ct. 1960). See also Gulest Associates, Inc. v. Town of Newburgh, 25 Misc.2d 1004, 209 N.Y.S.2d 729 (Sup. Ct. 1960).
It is basic and fundamental under our system of law that municipalities deal with their citizenry as equals and without discrimination. The municipality, regardless of its good intentions, may not coerce an owner to do somethng except through channels prescribed by law. As was stated by the court in Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229, 238 (1952):
"* * * Planning and zoning powers may not be exerted by indirection; the exercise of these functions must needs be in keeping with the principles of the enabling statutes."
Counsel for the defendants will present an appropriate judgment consistent with these conclusions.