**Jim D. MESALIC, Plaintiff,**

v.

**Frances SLAYTON, as Mayor of the Township of Jefferson and individually, John Sherman, as Forester of the Township of Jefferson and individually, and the Township Council of the Township of Jefferson, New Jersey, Defendants.**

**Civ. A. No. 87–1857.**

United States District Court, D. New Jersey.

June 28, 1988.

Hellring Lindeman Goldstein, Siegal Stern & Greensberg by Herbert J. Stern, Robert S. Raymar, Newark, N.J., for plaintiff.

Cohen & Kron by Lawrence P. Cohen, Robert D. Correale, Succasunna, N.J., for defendants.

## OPINION

DEBEVOISE, District Judge.

### PROCEDURAL HISTORY

Plaintiff, Jim D. Mesalic, filed a Verified Complaint and and Order to Show Cause in this action on May 14, 1987. Named as defendants are Frances Slayton, as Mayor of the Township of Jefferson, New Jersey and individually; John Sherman, as Forester of the Township of Jefferson and individually; and the Township Council of the Township of Jefferson. On July 6, 1987, the court entered a Stipulation of Settlement and Order Dismissing Action ("Stipulation and Order"). The matter is now before the court pursuant to an order to show cause entered May 19, 1988, directing the defendants to show cause why an order should not be entered enforcing the July 6, 1987 order, prohibiting defendants from enforcing against plaintiff two recently enacted zoning ordinances, and ordering defendants to deal with plaintiff in good faith.

### FACTS

The facts preceding the filing of this action are in dispute, but need not be resolved for the purposes of this proceeding. Plaintiff's allegations are as follows. Jefferson Township sold two parcels of land to plaintiff in late 1986. The parcel at issue in this proceeding was zoned R-3 for cluster residential development, comprised 83.-58 acres, and was permitted 228 townhouses and four single family homes. After the sale, plaintiff began preparations for submission of an application to the Jefferson Township Planning Board for the development of the property. Opposition to development of the property then surfaced within the township government, particularly upon the inauguration of defendant Slayton, an alleged opponent of development, as Mayor of the township. This opposition resulted in defendant Sherman refusing to assist plaintiff in determining proper pathways to move drilling equipment onto the property, and in defendant Sherman, along with a police officer, threatening to jail plaintiff and ejecting him from his property for no apparent reason other than to frustrate plaintiff's attempts to develop the property.

Without disputing that defendants Slayton and Sherman have opposed plaintiff's development of the property, defendants assert that the incidents described by plaintiff resulted primarily from an incident in which plaintiff's men trespassed and cut trees on property adjacent to the site and not owned by plaintiff. They contend that defendant Sherman refused to assist plaintiff regarding work on the property because he was investigating the extent of plaintiff's trespass onto the adjacent property, and had determined that no work should take place pending the investigation. They also argue that Sherman ejected plaintiff from the property to prevent plaintiff from working in violation of town-

ship tree cutting ordinances and in violation of a "stop work" order directed at plaintiff. Plaintiff contends that no stop work order concerning his property was ever issued.

The Verified Complaint alleges that the actions of the individual defendants were designed to thwart plaintiff's ability to develop his property, and constituted an unlawful taking of plaintiff's property, an unlawful denial of his right to due process of law, and an unlawful deprivation of his liberty under the Fifth and Fourteenth Amendments. The complaint also alleges violations of state law. The complaint demands judgment, *inter alia*, enjoining the defendants and their agents from interfering with plaintiff's access to the property; ordering the defendants to comply henceforth with all applicable laws; ordering defendants and their agents to process plaintiff's development applications in good faith; awarding damages; and awarding such other relief as might be necessary. The complaint seeks relief against the Township Council as well as the individual plaintiffs.

As noted above, the parties settled the case. Plaintiff contends that at its July 1, 1987 meeting, the Township Council formally reviewed and approved the stipulation entered by the parties. In support of this contention, plaintiff has submitted (but has not attached to an affidavit) a letter from Lawrence P. Cohen, counsel for Jefferson Township, informing plaintiff's attorney that he had "received approval at the Jefferson Township Council Meeting of July 1, 1987, which approval was set forth on the record to execute the stipulation." The letter does not describe by what means the stipulation was approved. Plaintiff has not submitted minutes or any other record of the approval.

The court entered the Stipulation and Order on July 6, 1987. Most of the obligations imposed on defendants by the Stipulation and Order, which comprises eleven paragraphs, concern plaintiff's access to the property. However, paragraph eight states that

All the named parties agree to comply in good faith with, and to cooperate and proceed diligently, fairly and in good faith under, now existing Jefferson Township Ordinances (or to challenge the validity thereof in proper fashion, or to file the appropriate application for a variance and, if necessary, to file an action or take an appeal as to any adverse decision thereon), and under state and federal law, with respect to the preparation, submission, informal and formal review, and amendment (if necessary) of plaintiff's forthcoming subdivision(s) and other documents for the development of plaintiff's Jefferson Township parcels of real property.

The course of the negotiations that resulted in this provision are hotly disputed. Defendants contend that "[a]t no time was it negotiated among the parties that there would be a moratorium on zoning ordinances that would affect Mr. Mesalic's property." Plaintiff asserts that defendant's version of the negotiations is "shockingly deficient," arguing that he specifically demanded the provision in paragraph eight because of his concern that Jefferson Township would prejudge his forthcoming applications and "change the rules of the game" by amending township ordinances.

Defendants allege that

discussions of a critical area ordinance predates that date that this litigation was initially filed and, in fact, predates the sale or advertisement for the sale of the property which Mr. Mesalic purchased from the Township.

Defendants imply that these discussions eventually led to enactment of the ordinances at issue in this proceeding. *See* Affidavit of June Cetro, paragraph 3. Plaintiff contends that there is no public record prior to his purchase of the property of any discussions regarding an ordinance that would affect the property.

After entry of the Stipulation and Order, plaintiff proceeded to prepare for submission to the Jefferson Township Planning Board the necessary plans and studies for his planned cluster housing and single family home development. On July 7, 1987, the Planning Board reviewed the concept plan for the development. Plaintiff formal-

ly filed more extensive plans with the Planning Board on December 22, 1987. On March 15, 1988, the Planning Board declared plaintiff's plans and supporting documents for the proposed development complete.

Over plaintiff's objections, the Jefferson Township Council adopted Ordinance 4–88 on March 2, 1988, thirteen days before completion of plaintiff's application to the Planning Board. The ordinance, which amends the Township's Zoning Ordinance, became effective on March 27, 1988. On May 17, 1988, the Planning Board denied plaintiff's application for the proposed development, determining that the proposed development did not conform to the new density ordinance. Plaintiff contends, and defendants do not dispute, that application of the ordinance to plaintiff's project would force plaintiff to eliminate 125 of the 326 housing units he has proposed.[1]

## DISCUSSION

### Interpretation of Paragraph Eight

■ Plaintiff contends that the Stipulation and Order prohibits defendants from applying the new ordinance to his development. Although the bulk of the stipulation concerns plaintiff's access to his property, and not the processing of his application by the local authorities, the literal terms of paragraph eight do prohibit the defendants from applying new ordinances to plaintiff's development. Defendants protest that they do not recall negotiating any provision that prohibits changes in the zoning laws. However, the court must interpret the stipulation, not the parties' competing versions of the negotiations that produced it.

Defendants' other arguments in support of their reading of the stipulation are meritless. The provision does not, as defendants contend, apply only to the processing of plaintiff's tree removal application; its language contains no such limitation. Interpreting the provision to prohibit application of township zoning amendments to plaintiff's proposed development also would not prohibit application of new state and federal laws, as defendants suggest. The provision requires application of all "now existing" township zoning ordinances, but refers only to state and federal law, not such law that is "now existing." Moreover, the provision is not of unlimited duration, as defendants suggest. Paragraph eight requires plaintiff, as well as defendants, to proceed diligently with respect to the application. Plaintiff has done so. If he had not proceeded diligently, then the requirement to apply existing law to his application would no longer apply. Finally, it is of no significance whether the township council discussed any amendments to the ordinances applicable to plaintiff's property prior to its sale to plaintiff. Because paragraph eight requires defendants to apply "existing" law to plaintiff, it represents a choice on the part of the defendants to forego with respect to plaintiff's property any amendments to the ordinances, whether or not they had been previously discussed. Thus, the terms of paragraph eight require defendants to process plaintiff's application under township ordinances existing at the time of the agreement.

### Enforceability of Paragraph Eight

■ Defendants also argue that paragraph eight is unenforceable. In support of this contention, defendants first note that the zoning change would have been lawful in the absence of the settlement agreement, despite the fact that plaintiff's application was near completion. "[A] municipality may change its regulating ordi-

---

1. Although plaintiff originally complained in this proceeding of the enactment of two ordinances, Nos. 4–88 and 5–88 (see Order to Show Cause entered May 19, 1988), the affidavit in support of the Order to Show Cause only mentions Ordinance 4–88. However, if indeed defendants also enacted an Ordinance 5–88 subsequent to the date of the agreement, my holding today applies to that rule as well, for the Stipulation and Order prohibits application to plain-

tiff's application of any subsequently enacted ordinance.

Plaintiff contends that the Ordinance 4–88 is "poorly and ambiguously drafted, ... [and] vests vast discretion in Township officials." However, plaintiff seeks relief from the requirements of the ordinance only on the ground that the ordinance violates the Stipulation and Order, not because of its alleged unreasonableness.

nances after an application has been filed[,] even where the municipality amends its ordinance in direct response to the application." *Burcam Corp. v. Planning Board of the Township of Medford,* 168 N.J.Super. 508, 512, 403 A.2d 921 (App.Div.1979). Next, defendants cite to *Midtown Properties, Inc. v. Madison Township,* 68 N.J.Super. 197, 172 A.2d 40 (Law Div.1961), *aff'd.* 78 N.J.Super. 471, 189 A.2d 226 (App.Div. 1963), where the lower court stated:

It is too well established to cite authority for the proposition that while a public body may make contracts as an individual, it can only do so within its expressed or implied powers; and that those who deal with the municipality are charged with notice of the limitations imposed by law upon the exercise of that power.

68 N.J.Super. at 208, 172 A.2d 40.

Finally, defendants argue that they had no authority to agree, without ratifying the agreement by resolution or ordinance, to apply to defendant's proposed development only those ordinances in effect on the date of the Stipulation and Order, and that such an unenforceable agreement does not become valid merely by being incorporated in a consent judgment. In support of this contention, defendants cite to *Midtown Properties Inc. v. Township of Madison, supra,* where the court refused to enforce a consent decree entered by a developer and a township. In that action, where the plaintiff challenged the township's denial of his application for subdivision of his property, the parties settled the action, and agreed, *inter alia,* that in order to obtain final approval, plaintiff was only required to comply with the then-existing township ordinances and regulations. The trial judge entered a consent judgment based on the agreement. When the plaintiff sought final approval of the subdivision, the township planning board denied the application. The plaintiff sought enforcement of the consent decree.

The court held that the decree was unenforceable because the township had no authority to bind itself to the commitments in the agreement. Stating that "[w]here a [zoning statute] sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure[,]" the court held that the defendants had no authority to exempt the plaintiff from the township's procedures for filing and approval of his plan, or to "surrender[ ] their inherent power, right, and duty, to keep their zoning and planning ordinances mutable by making necessary amendments or changes for the benefit of the public." 68 N.J.Super. at 205–209, 172 A.2d 40. Other cases have also held that agreements between municipalities and landowners are void if they attempt to circumvent the requirements of the state zoning statute. *See, e.g., Suski, Jr. v. Mayor and Commissioners of Beach Haven,* 132 N.J.Super. 158, 333 A.2d 25 (App.Div.1975); *V.F. Zabodiakin Engineering Corp. v. Summit Zoning Board of Adjustments,* 8 N.J. 386, 86 A.2d 127 (1952).

*Midtown Properties* and the other cases cited by defendants only involved state law, and therefore addressed only the relationship between state statutory law and consent decrees based on state law claims. The complaint in this action, as well as claiming state law violations, alleged that the defendants, acting in their official capacities, violated plaintiff's constitutional rights by barring him from his property in furtherance of the township's policy of stopping plaintiff's development. The parties agreed to entry of certain injunctive relief in settlement of plaintiff's claims, and this court entered a Stipulation and Order embodying that relief. Thus, unlike the situation in *Midtown Properties,* the enforceability of paragraph eight depends on whether the court had jurisdiction to order the relief contained therein. Jurisdiction existed if plaintiff's federal claims were colorable, and if the relief was fairly designed to cure the constitutional violations.

The Verified Complaint alleges that the defendants' interference with his use of his property constituted a taking and a deprivation of his due process rights in violation of the Fifth and Fourteenth Amendments. In a recent case, *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988), the Third Circuit set

forth the factors relevant to a plaintiff's claim of a denial of due process. The court stated that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process[,]" and that relief may be appropriate where governmental action is "arbitrary, irrational, or tainted by improper motive." At 1129. Although the court declined to define "the outer limits of the showing necessary to demonstrate" a substantive due process violation, it noted with approval that the Fourth Circuit had found such a violation where a town council improperly intervened in the municipality's decision whether to issue him a building permit. At 1129. (*See Scott v. Greenville County*, 716 F.2d 1409 (4th Cir.1983).) With regard to the case before it, the *Bello* court found that the plaintiffs would be entitled to relief if they proved their contentions that certain municipal council members, acting in their capacity as officers of the municipality, had improperly interfered with the process by which the municipality issued building permits, and that they had done so for partisan political or personal reasons unrelated to the merits of the application for the permits.

With respect to the taking clause, the Supreme Court has generally held that a land use regulation can effect a taking if it "does not substantially advance legitimate state interests, ... or denies an owner economically viable use of his land." *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). A number of factors are relevant to taking clause claims. One of these factors involves whether the challenged governmental action advances a legitimate public interest. *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1030 (3d Cir.1987),

*cert. denied,* —— U.S. ——, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987).[2]

The Verified Complaint in this case alleged that the defendants, out of personal animosity toward plaintiff, had denied plaintiff physical access to his property and threatened his arrest for no purpose other than to frustrate his attempts to apply for the necessary approvals to develop the property. The complaint alleged that the defendants had no legal basis for such actions. These allegations colorably support claims that the defendants' actions violated the Fifth and Fourteenth Amendments because they were "arbitrary, irrational, or tainted by improper motive[,]" or constituted a physical invasion of plaintiff's property not supported by a legitimate public interest. Because plaintiff alleged that the defendants' actions were in furtherance of a policy of the township government to stop plaintiff's development, the complaint also states a colorable basis for holding the township government liable.

The relief in paragraph eight was reasonably designed to cure the alleged constitutional violations. The complaint alleged that on March 26, 1987, the Mayor told plaintiff that she would "never let the property be developed", but would instead do "whatever is necessary to stop development of the property." Plaintiff contends that these statements, together with defendants' other actions, convinced him that he needed judicial protection at every step of the development process. Indeed, the terms of the Stipulation and Order proceed from issues of title to the land; to issues of access; to issues of tree removal to allow testing equipment onto the site; and finally to the issues of preparation, submission, review and approval of plaintiff's development plans for the land, contained in para-

---

**2.** If an exercise of police power is supported by a public interest, it may nevertheless offend the Fifth and Fourteenth Amendments if its impact "denies [a landowner] the 'justice and fairness' guaranteed by" those Amendments. *Agins v. Tiburon*, 447 U.S. 255, 262, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980) (quoting *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631). *See also Pace Resources*, 808 F.2d at 1030. The Third

Circuit has held that several factors are useful at this point in the analysis:

the type of governmental interference; the diminution in property value; and the extent of interference with "reasonable, distinct, investment-backed expectations." Governmental action will more readily be held a taking when it accomplishes physical invasion of the property.

*Pace Resources*, 808 F.2d at 1031.

graph eight. This relief was reasonable in light of plaintiff's allegations.

The Stipulation and Order, being based on colorable allegations of federal constitutional violations, overrides any state law to the contrary. This does not mean that the township council cannot amend its zoning ordinances. Paragraph eight merely prohibits the township from applying to plaintiff's project any amendments enacted after the date of the agreement.

## CONCLUSION

For the reasons discussed above, I conclude that plaintiff is entitled to the relief specified in the order to show cause. Plaintiff is requested to submit an appropriate form of order.