887 A.2d 64

**STATE of Maryland COMMISSION ON HUMAN RELATIONS**

v.

**BALTIMORE CITY DEPARTMENT OF RECREATION AND PARKS.**

**No. 2662, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Dec. 1, 2005.

34

Patricia A. Wood (Tracy E. Ashby, Glendora C. Hughes, General Counsel, on the brief), Baltimore, for appellant.

James R. Benjamin, Jr. (Dawn S. Lettman, Sandra R. Gutman, Chief Solicitor, Ralph S. Tyler, City Solicitor, on the brief), Baltimore, for appellee.

Panel: MURPHY, C.J., ADKINS, and SHARER, JJ.

ADKINS, J.

The State of Maryland Commission on Human Relations ("Commission"), appellant, sought to have the Baltimore City Department of Recreations and Parks ("City"), appellee, found in civil contempt of court for failure to make agreed-upon modifications to a place of public accommodation. The Circuit Court for Baltimore City denied the petition for contempt, and the Commission now challenges several rulings made by the circuit court during the contempt hearing. We shall hold that the settlement agreement sought to be enforced is void, and remand to the circuit court for further remand to the administrative agency.

## FACTS AND LEGAL PROCEEDINGS

On July 25, 1997, Robert Reuter, a disabled individual, filed a complaint of discrimination with the Commission against the City. Reuter, who is wheelchair-bound, alleged that he could not access several parts of the Cylburn Arboretum and Mansion, a place of public accommodation operated by the City. The Commission investigated the claim, and thereafter issued a written finding of probable cause to believe that the City violated Md.Code (1957, 2003 Repl.Vol. 2005 Cum.Supp.), Article 49B, section 5(b), by maintaining and operating a place of public accommodation that was inaccessible to those who use wheelchairs. When conciliation efforts between the Commission and the City failed, the matter was certified for public hearing.

On May 24, 2000, the Commission filed a Statement of Charges and a Request for Public Hearing with the Office of Administrative Hearings ("OAH"), alleging that the City had engaged in an unlawful public accommodations practice. OAH then served the City with a copy of the Statement of Charges,

along with a notice to appear at a pre-hearing conference. The City was directed to file an answer within fifteen days of service and to file a pre-hearing statement no later than July 28, 2000. The City filed neither.

On August 4, 2000, the parties appeared at the scheduled pre-hearing conference. Because the City had failed to file an answer or a pre-hearing statement, the Commission moved for an order of default. The Administrative Law Judge ("ALJ") ordered the City to file an answer, and also scheduled a November 1, 2000 hearing on the Commission's motion for order of default. Finally, a public hearing on the merits was scheduled for December 5–6, 2000.

Before the motions hearing, the Commission, Reuter, and the City entered into a settlement agreement. Under that agreement, the City was required to modify the Arboretum, Mansion, and grounds, including the garden playhouse, to make them wheelchair accessible by April 1, 2001. In addition, the City was required to make the trails and bird collection accessible by June 30, 2002. OAH was notified that the parties had entered into a settlement agreement. The OAH then issued an order adopting the settlement agreement as its final order, and dismissed the Commission's action with prejudice.

On November 20, 2001, because the City failed to make the required changes to the Arboretum, Mansion, and grounds by the required date, the Commission filed a petition for judicial enforcement of administrative order in the Circuit Court for Baltimore City. The City was served with a copy of the petition for enforcement, but again failed to file an answer within the time allowed. On February 11, 2002, the City filed a late answer, in which it admitted that the Commission was "technically correct" that the alterations were not completed. The next day, the Commission, which had yet to receive the City's late answer, filed a motion for order of default.

The Commission then moved to strike the City's late answer, or alternatively, for summary judgment, based on the City's admission that the required changes had not been

made. The City filed no response to the motion. On July 19, 2002, the circuit court issued two orders, one granting the motion to strike the answer, and the other granting the motion for summary judgment. The City did not move to alter or revise the summary judgment order; nor did it note an appeal.

On January 23, 2003, the Commission filed a petition to cite the City for civil contempt because none of the required alterations had been completed. The circuit court issued a show cause order, requiring the City to file an answer by June 2, 2003, and to show cause at a hearing on June 16, 2003, why it should not be adjudged in contempt. On June 2, 2003, the City filed a motion to dismiss the petition for contempt.

At the show cause hearing, the circuit court ruled that the settlement agreement was *ultra vires,* because it had not been approved by the Board of Estimates and the City Solicitor had not endorsed the contract, as required by the Baltimore City Charter. The court neither granted nor denied the Commission's petition for contempt, or the City's motion to dismiss the contempt proceedings, instead holding all matters *sub curia.* The court then ordered the parties to negotiate a new agreement. The parties conferred as ordered. The City agreed to comply with most provisions of the invalidated settlement agreement. It refused, however, to install a hard surface on the Circle Trail and stated that it planned to close the garden playhouse rather than install a ramp as previously agreed.

On July 22, 2003, the judge who was hearing the matter met with both parties, then all adjourned to tour the Arboretum grounds. The next day, the hearing reconvened, and the City recited for the record those requirements it agreed to complete, and those to which it objected. Both parties submitted post-hearing memoranda of law, and the City also filed a motion to vacate the order of summary judgment.

On January 14, 2004, the hearing reconvened. After argument, the circuit court reiterated that the settlement agreement was invalid and found that the construction of a hard surface on the Circle Trail was not a reasonable accommoda-

tion, because it would impose an undue hardship. The court then (1) denied the Commission's petition for contempt, (2) vacated the summary judgment order, and (3) ordered the Commission to pay costs. The Commission noted this timely appeal and presents the following questions for our review:

I. Did the circuit court err in invalidating the settlement agreement, which was agreed to by all parties and halted the administrative process?

II. Did the circuit court err in vacating the order for summary judgment when there was neither appeal of that order nor any timely motion to vacate?

III. Did the circuit court err in finding that installing a hard surface on one trail at the Arboretum was not a reasonable accommodation?

IV. Did the circuit court abuse its discretion in assessing costs against the Commission?

We answer questions I and IV in the negative. We answer questions II and III in the affirmative, however, and accordingly, reverse the judgment on those issues.

## DISCUSSION

As a threshold matter, we must address the City's motion to dismiss the Commission's appeal. The City argues that under *Pack Shack, Inc. v. Howard County*, 371 Md. 243, 808 A.2d 795 (2002), the Commission has no right of appeal, because it failed in its attempt to have the City adjudged in contempt.

 In *Pack Shack*, 371 Md. at 254, 808 A.2d 795, the Court of Appeals held that Md.Code (1973, 2002 Repl.Vol.), section 12–304 of the Courts & Judicial Proceedings Article [1] "clearly

---

1. Md.Code (1973, 2002 Repl.Vol.), section 12–304 of the Courts & Judicial Proceedings Article states:

 **Appeals in contempt cases.**
 (a) *Scope of review.*—Any person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court, including an interloc-

and unambiguously limits the right to appeal in contempt cases to persons adjudged in contempt." Therefore, as the " 'party who unsuccessfully [sought] to have another party held in contempt,' " the Commission has no right to appeal the circuit court's denial of its petition for contempt. *See id.* (citation omitted). Accordingly, we will not review the circuit court's denial of the petition for contempt.

The court, however, did not just deny the Commission's motion for contempt. It also invalidated the settlement agreement, vacated the summary judgment order, and found that installing a hard surface on the Circle Trail was not a reasonable accommodation. We shall review the Commission's arguments regarding the propriety of these additional rulings.

 Because "a party who is aggrieved by a final judgment of a circuit court under [the Administrative Procedure Act] may appeal to [this Court] in the manner that law provides for appeal of civil cases," Md.Code (1984, 2004 Repl. Vol.), section 10–223(b) of the State Government Article ("APA"), our standard of review is governed by Md. Rule 8–131(c). Accordingly,

> [a]s to the circuit court's factual findings, we look to whether those findings were supported by "substantial evidence" in the record. When " 'there is any competent, material evidence to support the factual findings below, we cannot hold those findings to be clearly erroneous.' " "Although the factual determinations of the circuit court are afforded significant deference on review, its legal determinations are not." "Indeed, the appropriate inquiry for such determinations is whether the circuit court was 'legally correct.' "

*Stansbury v. MDR Dev., L.L.C.*, 161 Md.App. 594, 603, 871 A.2d 612, *cert. granted*, 388 Md. 97, 879 A.2d 42 (2005) (citations omitted).

---

utory order, remedial in nature, adjudging any person in contempt, whether or not a party to the action.

(b) *Exception.*—This section does not apply to an adjudication of contempt for violation of an interlocutory order for the payment of alimony.

## I.

### Invalidation Of Settlement Agreement

At the show cause hearing, the circuit court found that the settlement agreement had not been: (1) submitted to and approved by the City's Board of Estimates as required by the Baltimore City Charter, Art. VI, section 17;[2] or (2) endorsed by the City Solicitor as required by the Baltimore City Charter, Art. VII, section 24(b).[3] Based on these findings, the circuit court ruled that the settlement agreement was *ultra vires*, and hence invalid.

The court's factual findings that the settlement agreement failed to follow the approval process mandated by the Baltimore City Charter are supported by competent, material evidence in the record, and therefore, are not clearly erroneous. The question, then, is whether the circuit court's ruling that the settlement agreement was *ultra vires* was legally correct.

### Contract Validity

It is well settled that "a county or municipality can make a contract **only** in the manner prescribed by the legislature[.]" *Tuxedo Cheverly Volunteer Fire Co. v. Prince George's County*, 39 Md.App. 322, 330, 385 A.2d 819 (1978)(emphasis added)(*"Tuxedo"*). *See also Alternatives Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs*, 155 Md.App. 415, 425, 843 A.2d 252 (2004)("a governmental entity, unlike a

---

**2.** Article VI, section 17 of the Baltimore City Charter provides that "no expenditure for any new improvement shall be made out of any appropriation in the Ordinance of Estimates unless the plans for such improvement are first submitted to and approved by the Board of Estimates."

**3.** Article VII, section 24(b) of the Baltimore City Charter provides, in pertinent part, that

[a]ll deeds, bonds, contracts, releases and other legal instruments involving the interest of the City or to be executed or approved by the Mayor or other officer of the City before they are executed or accepted, shall be submitted to the City Solicitor and have endorsed upon them the City Solicitor's opinion as to their legal sufficiency.

private corporation, may never have an obligation imposed upon it to expend public funds except in the formal manner expressly provided by law"). This rule is strict; if the municipality's charter provisions are not precisely followed during the contracting process, the contract is *ultra vires*, or outside the power of the municipal corporation to make,·and void *ab initio. See Tuxedo Cheverly*, 39 Md.App. at 330, 385 A.2d 819.

The Commission asserts four reasons why the settlement agreement is valid despite the failures to abide by the Charter: (1) an assistant solicitor of the City negotiated the settlement agreement; (2) the director of the Department of Recreations and Parks signed the agreement; (3) the assistant solicitor "affirmatively misled" the Commission by assuring the Commission that the funds needed to make the modifications were in the budget; and (4) the City ratified the contract when it began to make the modifications required under the settlement agreement. We are not persuaded that any or all of these reasons cure the defects in the approval process.

■ Maryland appellate courts have repeatedly stated:
No principle of the law relating to municipal corporations is more firmly established than that those who deal with their agents or officers must, at their peril, take notice of the limits of the powers of both the municipality and of those who assume to act as its agents and officers; and *in no State has this principle been more frequently applied or more rigidly enforced than in Maryland.*

*Alternatives Unlimited*, 155 Md.App. at 427, 843 A.2d 252 (citations omitted). *See also Hanna v. Bd. of Educ. of Wicomico County*, 200 Md. 49, 57, 87 A.2d 846 (1952)("The rule is firmly established that one who makes a contract with a municipal corporation ... is bound to take notice of the limitations of its powers to contract"). Because the limitations on the City's power to contract are a matter of public record, the assistant solicitor's involvement in contract negotiations and the director's signature on the settlement agreement are immaterial. *See Gontrum v. Mayor & City Council of Balt.*, 182 Md. 370, 375–76, 35 A.2d 128 (1943)("the law makes a

distinction between the effect of the acts of an officer of a [municipal] corporation, and those of an agent for a principal in common cases; in the latter the extent of authority is necessarily known only to the principal and the agent, while, **in the former, it is a matter of . . . public law"**).

■ The Commission's contention regarding misrepresentation by the assistant solicitor fails for similar reasons. "Everyone dealing with officers and agents of a municipality is charged with knowledge of the nature of their duties and the extent of their powers, and therefore **such a person cannot be considered to have been deceived or misled by their acts when done without legal authority.**" *Lipsitz v. Parr,* 164 Md. 222, 227–28, 164 A. 743 (1933)(emphasis added).

■ The rule is equally rigid regarding allegations of contract ratification by the municipality. "Ratification of a void contract may occur **only** if the authority empowered by charter or statute to make the contract subsequently performs the prescribed acts of authorization."[4] *Tuxedo Cheverly,* 39 Md. App. at 331, 385 A.2d 819 (emphasis added and citation omitted). *See also Packard v. Hayes,* 94 Md. 233, 252, 51 A. 32 (1902)("the city corporation cannot attempt to do an act which is void, and subsequently make the act valid by ratification").

We must now analyze what effect, if any, the OAH's adoption of the *ultra vires* settlement agreement as the final administrative order has on the Commission's ability to enforce the terms of the settlement agreement.

---

4. Although not argued by the Commission, we note that municipalities also cannot be estopped to deny the validity of *ultra vires* contracts. *See Gontrum v. Mayor & City of Balt.,* 182 Md. 370, 378, 35 A.2d 128 (1943)("no estoppel as applied to a municipal corporation can grow out of dealings with public officers of limited authority where such authority has been exceeded, or where the acts of its officers and agents were unauthorized or wrongful"); *Tuxedo Cheverly Volunteer Fire Co. v. Prince George's County,* 39 Md.App. 322, 331, 385 A.2d 819 (1978)(" 'If a contract is ultra vires it is wholly void and . . . the municipality cannot be estopped to deny the validity of the contract").

### Consent Judgment

After entering into the settlement agreement with the City, the Commission filed a motion to dismiss the statement of charges with the OAH. The ALJ, having found that "the agreement ... dispose[d] of the issues," adopted the settlement agreement as part of the administrative order, and then dismissed the case with prejudice. The ALJ's final order, then, is a consent judgment.[5] *See Jones v. Hubbard,* 356 Md. 513, 525–26, 740 A.2d 1004 (1999).

We have found no Maryland cases addressing the factual situation presented here, *i.e.,* a party to an *ultra vires,* and hence void, contract seeks enforcement of the contractual terms through a consent judgment that adopted the agreement. Several other states, however, have confronted similar issues.

A thoughtful discussion of the issue appears in a published chancery court decision from New Jersey. In *Midtown Props., Inc. v. Twp. of Madison,* 68 N.J.Super. 197, 172 A.2d 40 (Law Div.1961), *aff'd,* 78 N.J.Super. 471, 189 A.2d 226 (App.Div.1963), the plaintiff owned 1,475 acres of land in Madison, New Jersey ("the township"). The plaintiff applied to the township's planning board for subdivision of the entire tract, and the planning board recommended favorable action to the township committee. In turn, the committee approved the application upon plaintiff's compliance with particular conditions concerning sewage, roads, and dedication of land.

Nearly two years later, after the plaintiff had submitted at least two applications for final approval of 129 lots, the planning board denied plaintiff's applications. Plaintiff then sought to compel the township to grant final approval for the 129 lots. Two years after filing suit, plaintiff entered into a

---

**5.** A consent judgment has attributes of both contracts and judicial decrees. *See Jones v. Hubbard,* 356 Md. 513, 529, 740 A.2d 1004 (1999). "Generally, ... consent judgments should be treated in the same fashion as any other form of judgment." *Id.* The hybrid nature of consent judgments, however, " 'has resulted in different treatment for different purposes.' " *Id.* (citation omitted).

written contract with the township, which set forth the terms under which plaintiff could proceed with the development. This agreement was adopted by the chancery court, and became part of the consent judgment.

Two years later, after expending $200,000 on the development, plaintiff filed its plats with the planning board for final approval. The planning board refused to grant final approval, however, because it considered the consent judgment to be illegal and void. On review, the New Jersey court began with the legality of the contract itself, because it was "[the] contract, as incorporated into the consent judgment, upon which the plaintiff relie[d] for its claim for permission to proceed" with development of the land. *Id.* at 45. The court noted that under the contract, the township agreed to a final approval procedure that was "in complete disregard of the statutory procedure and [the township's] own ordinances and regulations." *Id.* at 44.

The court held that the contract, "on its face, is illegal and void. It is an attempt to do by contract what can only be done by following statutory procedure." *Id.* at 45. The court reasoned that "[a] municipality in exercising the power delegated to it must act within such delegated power and cannot go beyond it. Where the statute sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure." *Id.* at 45–46. Because the contract attempted to give plaintiff special benefits and privileges condemned by law, it was *ultra vires,* and void. *See id.* at 46.

Addressing the effect of incorporating the contract into the consent judgment, the court held that "[c]ertainly, if the contract is illegal and void, having it incorporated into a consent judgment **will not breathe legal life into it.**" *Id.* at 45 (emphasis added). The court reasoned that "[t]he mere fact that the contract took the changed form of a consent judgment does not make it good." *Id.*

The court set aside the consent judgment as void, observing that "our decided cases have long established the philosophy

that a court will **set aside a void judgment at any time.**" *Id.* (emphasis added). *See also Edelstein v. City of Asbury Park,* 51 N.J.Super. 368, 143 A.2d 860, 871–72 (App.Div.1958)("a [consent] judgment has no conclusive effect if the municipal action was illegal or improper in any respect. The mere fact that a judgment was entered by consent does not preclude appropriate inquiry into the validity of the municipal authorization therefor .... the judgment is only as good as the authorizing [municipal] action"); 56 Am.Jur.2d *Municipal Corporations* § 806 (2005)("a consent judgment in which the officials representing the municipality assume obligations against the municipality unauthorized by law ... is void").

The courts of other states have ruled similarly on the issue of enforcing consent judgments based on invalid agreements. In *State ex rel. City of St. Paul v. Great N. Ry. Co.,* 134 Minn. 249, 158 N.W. 972 (1916), a railway company sought to prevent the City of St. Paul from requiring the company to rebuild a bridge due to an earlier contract between the two parties, under which the railway company was only required to build the bridge abutments and superstructure. The Supreme Court of Minnesota held that the contract was "unquestionably void," because it "attempted to take from the city a part of its police power." *Id.* at 974.

The Minnesota court rejected the railway company's argument that, even if the contract was void by itself, a consent judgment incorporating the contract "conclusively established" the contract's validity. *Id.* The court reasoned that "[the consent] judgment was the act of the parties, not the act of the court; and whatever effect such a judgment might have upon the personal rights of parties thereto who possessed the power to make such an agreement, neither the state nor the governmental agencies of the state can be shorn of their governmental power by any such devise." *Id.* at 975. Because "there was not only an absence of legislative authority for the acts of the city, but it was beyond the power of the Legislature to grant any such authority," the consent judgment had no effect, and the appellate court affirmed the trial court's issuance of a writ requiring the railway company to rebuild the bridge. *Id.*

In *Union Bank of Richmond v. Comm'rs of Town of Oxford,* 119 N.C. 214, 25 S.E. 966 (1896), the town of Oxford issued municipal aid bonds to a railroad company under a law that was thereafter deemed void because the enactment procedure was not properly followed. *See id.* at 967. The Supreme Court of North Carolina then addressed the question of what effect a consent judgment between the town and the railroad company had on the validity of the town's indebtedness. The court held that "[the consent judgment] is . . . on its face, **to be treated as void, being ultra vires**" because "[i]f the commissioners of the town were vested with no authority to create the debt, they certainly could not acquire such power by entering into a consent judgment." *Id.* at 969 (emphasis added). *See also Coolsaet v. City of Veblen,* 55 S.D. 485, 226 N.W. 726, 728 (1929)(" 'The fact that by consent of the municipal officers an agreement . . . has been put in the form of a judgment . . . does not cure a lack of power in the officers to make it, and **if such power be lacking the judgment as well as the stipulation is void'** ")(emphasis added and citation omitted).

██ Persuaded by the reasoning of these cases, we hold that the consent judgment here is void and unenforceable, because it is based on the *ultra vires* settlement agreement between the Commission and the City. "To hold otherwise would be to insulate [illegal] municipal acts from review, in derogation of the public interest, where they could be contrived to take the form of a judgment by consent." *Edelstein,* 143 A.2d at 872. *See also Midtown Props.,* 172 A.2d at 46 ("If this contract and consent judgment were to be held valid this court would be putting its stamp of approval upon what is obviously an unauthorized and illegal exercise of the [town's] zoning power").

██ We are not persuaded otherwise by the Commission's argument that the consent judgment became unassailable when the City took no appeal from the summary judgment granted by the circuit court on the Commission's petition for judicial enforcement of administrative order. A void judg-

ment does not become valid and effective simply because no appeal is filed.

Because we conclude (1) that the settlement agreement was *ultra vires* and void *ab initio,* and (2) the consent judgment is unenforceable, "the parties should 'be returned to the status quo prior to their entering into the contract.' " *Tuxedo Cheverly,* 39 Md.App. at 333, 385 A.2d 819. *See also J.A. & W.A. Hess, Inc. v. Hazle Twp.,* 26 Pa.Cmwlth. 379, 363 A.2d 844, 847 (1976), *overruled on other grounds,* 484 Pa. 628, 400 A.2d 1277 (1979)("where the underlying contract is found to be invalid because it is ultra vires . . . the courts will leave the parties in a status quo posture if at all possible"). "This is in accord with the general rule in this State relating to rescission of contracts in equity." *Tuxedo Cheverly,* 39 Md.App. at 333, 385 A.2d 819 (citing *Funger v. Mayor of Somerset,* 244 Md. 141, 223 A.2d 168 (1966) and *Lazorcak v. Feuerstein,* 273 Md. 69, 327 A.2d 477 (1974)).

Thus, the parties shall be restored to the status quo prior to November 2, 2000, the date the parties entered into the settlement agreement. This restoration effectively revives the Commission's right to proceed against the City at the administrative level. Because the consent judgment is void and unenforceable, the OAH's dismissal of the statement of charges with prejudice is nullified.

## II.

### Reasonable Accommodation

After invalidating the settlement agreement, the circuit court ordered the parties to confer in order to create a new contract. The parties did so, but could not completely agree on the terms, with the major "sticking point" being installing a hard surface on the Circle Trail. At the January 14, 2004 hearing, the circuit court found that installing a hard surface on the Circle Trail constituted an undue hardship on the City, and therefore was not a reasonable accommodation. The Commission argues that the court erred in so finding.

We do not decide whether the "undue hardship" finding was error because the circuit court never should have ordered negotiations or made findings to resolve "sticking points." [6] As we held in part I, the correct action upon ruling that the settlement agreement was void *ab initio* was to restore the parties to the status quo before entering into the *ultra vires* contract, *i.e.*, remand to the administrative agency to allow the Commission to proceed against the City.

Here, by virtue of the consent judgment, the City was able to circumvent the normal adjudicative phase of the administrative process. The unique procedural posture of this case, however, should not act as an "escape hatch" for the City. The Commission will have another opportunity to proceed with its case against the City in the OAH, and, in turn, the City will have its chance to raise the undue hardship defense in the proper forum.

## III.

### Assessment Of Costs

Finally, the Commission argues that the assessment of costs against the Commission was an abuse of discretion, given the City's continued non-compliance in this matter. "The allowance of costs is within the sound discretion of the trial court and will not be disturbed on appeal unless that discretion has been abused." *Balt. County v. Xerox Corp.*, 41 Md.App. 465, 477, 397 A.2d 278, *aff'd*, 286 Md. 220, 406 A.2d 917 (1979). Although we might have allocated costs differently had we been sitting as the trial court, we cannot say that the circuit court abused its discretion in ordering the Commission to pay the costs associated with pursuing the unsuccessful petition for contempt against the City.

---

6. Because we hold that the circuit court erred in even **reaching** the question of undue hardship, its factual findings on that subject should not act as a bar to administrative proceedings on the issue of undue hardship under the doctrines of *res judicata* and/or collateral estoppel.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY, WITH DIRECTION THAT THE CIRCUIT COURT REMAND TO THE ADMINISTRATIVE AGENCY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY APPELLANT, ONE–HALF BY APPELLEE.